Perles, Appellant, *v.* Hoffman.
Bradley, Appellant, *v.* Hoffman.

Argued October 11, 1965. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

reargument refused October 26, 1965.

*Philip Baskin,* with him *Leonard R. Apfelbaum,* and
*Baskin, Boreman, Sachs & Craig,* for appellants.

*Preston L. Davis,* County Solicitor, for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, October 20, 1965:

These are consolidated appeals from Orders of the Court of Common Pleas of Northumberland County which dismissed two complaints in mandamus. The Court below refused to order the County Board of Elections (1) to accept a withdrawal by William H. Bradley, the Democratic nominee for office of County Controller, and (2) to accept George F. Perles as the substitute nominee.

William H. Bradley was duly nominated at the primary election held May 18, 1965. During the summer, Mrs. Bradley became seriously ill with a respiratory disease diagnosed during the first week in August as emphysema. She was advised by her physician to move to a dry climate. Bradley then decided to withdraw as a candidate and to move with his wife and eight children to Albuquerque, New Mexico.*

August 9th was the eighty-fifth day before the general election in November 1965, and the last day for withdrawal of a candidate, as provided by §978 of the Election Code.**  Bradley prepared a letter of with-

---

* Mrs. Bradley and the children moved to New Mexico on August 18th, but Bradley has not yet moved.

** Act of 1937, June 3, P. L. 1333, §§978, 981(a), 25 P.S. §§2938, 2941, as amended, the pertinent provisions of which are as follows: "[§978] . . . Such written withdrawals shall be filed with the . . . county board of elections . . . at least eighty-five (85) days previous to the day of the general or municipal election. Such withdrawals to be effective must be received . . . in the office of any county board of elections not later than the ordinary closing hour of said office on the last day for filing same.

"[§981](a) Substituted nomination certificates to fill vacancies caused by the withdrawal of candidates nominated at primaries or by nomination papers shall be filed with the . . . proper county board of elections . . . at least seventy-five (75) days before the day of the general or municipal election . . . ."

drawal dated Friday, August 6th, and signed by him on Monday, August 9th, on which day the letter was handed by him to Kehler, one of the three members of the Board of Elections. It was delivered to Kehler in the office of the County Board of Elections.

Kehler did not present Bradley's letter to the Board of Elections until three days later, viz., August 12th, during which period he showed the letter to the County Democratic Committee. That Committee chose George F. Perles as successor candidate to Bradley at its meeting on Wednesday, August 11th. The reason given by Kehler for the three-day delay was that it was desirous that the letter be presented to the Board when the Chairman, who was absent on August 9th, was present.

The Board refused to accept the withdrawal on the grounds that delivery to a board member rather than to the office of the County Board of Elections was not, a valid legal delivery.

The substitution of Perles was refused by the Board and by the lower Court solely on the ground that Bradley had not properly and validly withdrawn as a candidate and therefore no vacancy existed.

The parties stipulated that if Bradley's withdrawal were found to be valid, the selection of Perles would have been accepted by the Board of Elections, since the substitution petition was properly and timely presented.* The net result of the decisions of the Board of Elections and of the lower Court is that the Democratic Party would have either no candidate or a likely-non-resident candidate on the ballot in the November election and the people of that district would have no real opportunity to exercise a choice or vote for a candidate of their choice.

The present case is controlled in principle by *Altoona Mayor Substitute Nomination Case*, 413 Pa. 305,

---

* On August 12th, the ballots had neither been ordered nor printed.

196 A. 2d 371 (1964). In the *Altoona* case, the propriety of the withdrawal by the first candidate and by his substitute was not objected to, although the withdrawal of the substituted candidate was filed after the time then set by the Code. Furthermore, the substituted nomination certificate was filed seven days after the date set by §981 of the statute.* This Court held that the substitution was valid (a) under §1006** of the Code, and (b) because the Code must be liberally construed. The Board correctly states in its brief that ". . . the clear, underlying thread of reasoning [in the *Altoona* case] is based upon the proposition that electors should be permitted a choice between two candidates." Since, in the *Altoona* case, one candidate had withdrawn and the substitute candidate's withdrawal was not questioned, if the substitution petition had not been accepted, only one candidate would have appeared on the ballot. This would have operated to deprive the electorate of a choice between candidates, if the Code had been strictly construed. Appellants first rely on a technicality and secondly on unrealistic and stretched reasoning.

If the substitution provision of §981 is construed as directory only, as was held in *Altoona,* there would be an apparent inconsistency if the withdrawal provision of §978 is considered mandatory. The reasoning applying to the one applies equally to the other. In both cases the practical result of a mandatory and literal construction of the provision would be to deprive the voters of a real choice between candidates.

---

* Act of 1937, June 3, P. L. 1333, §981, §1006, 25 P.S. §2941, as amended, §2966.

** Section 1006 of the Code provides: "As soon as any substituted candidate shall have been duly nominated, at any time prior to the day on which the printing of ballots is started, his name shall be substituted in place of that of the candidate who has died *or withdrawn*." (emphasis, ours)

To obtain freedom of choice, a fair election and an honest election return were the purposes and objectives of the Election Code; these purposes and objectives are in accord with sound public policy. This Court has held, we repeat, that "the Election Code must be *liberally**\* construed so as not to deprive an individual of his right to run for office, or the voters of their right to elect a candidate of their choice." *Ross Nomination Petition*, 411 Pa. 45, 48, 190 A. 2d 719, 720 (1963). See also to the same effect, *Altoona Mayor Substitute Nomination Case*, 413 Pa., supra; *County Commissioner Substitute Nomination Case*, 383 Pa. 372, 118 A. 2d 750 (1955).

The Orders of the Court below are reversed and the Board of Elections of Northumberland County is directed to remove the name of William H. Bradley from the ballot in the forthcoming general election and substitute therefor the name of George F. Perles.

Mr. Justice EAGEN concurs in the result.

Mr. Justice JONES dissents.

———

CONCURRING OPINION BY MR. JUSTICE COHEN, October 25, 1965:

I concur in the result and join in the opinion of the majority. Therefore, under ordinary circumstances I would have no occasion to say anything further. Since, however, the dissent misconstrues the implications of the *Altoona* case, I am impelled to make a further observation.

The record in the *Altoona* case clearly reveals that the withdrawal was filed beyond the permitted limitation which the writer of the majority in *Altoona* (being the author of the dissent here in *Perles*) sought to justify by a footnote indicating that since no objection

———

\* Italics, ours.

was imposed to the late withdrawal that issue was no concern to us and not before our Court.

I pointed out in my dissent in *Altoona* that the County Board of Elections which permitted the late withdrawal does not sit as a quasi-judicial body adjudicating contending forces as it wishes, but rather as an executive agency to carry out legislative mandates. Its duties are ministerial only. *Shroyer v. Thomas*, 368 Pa. 70, 81 A. 2d 435 (1951). Hence, even though no objection was made to the late withdrawal, neither the County Board of Elections nor our Court should have permitted it since to so do was a patent violation of the Election Code. The vacancy created by the improperly permitted late withdrawal was then used by the majority in *Altoona* as the excuse and justification to further violate the Code by permitting a late substitution. Since the Court in *Altoona* did permit a late substitution after a late withdrawal, I cannot see how we can now do otherwise then to permit a timely substitution after a timely withdrawal.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

In dismissing the complaint in the instant case, the court below based its decision on the grounds that the petition for withdrawal was neither timely filed nor properly acknowledged. This Court, in reversing that decision, as well as the decision of the County Board of Elections, holds that even if filed late, the withdrawal should be permitted on the theory that the statutory time period for filing such withdrawals is merely directory.[1] In my view such a construction needlessly

---

[1] A directory provision is one the observance of which is not necessary to the validity of the proceedings. *American Labor Party Case*, 352 Pa. 576, 579, 44 A. 2d 48, 49 (1945). It should be noted that although the court below dismissed the complaint on two grounds, the majority ignores the lack of acknowledgement on the withdrawal petition. Despite a complete lack of discussion on this

and unwisely opens the electoral process to the possibility of manifold abuses. I, therefore, must dissent from such a construction of the withdrawal provision of the Pennsylvania Election Code.

In support of its interpretation of the statutory language as directory, the majority relies on *Altoona Mayor Substitute Nomination Case,* 413 Pa. 305, 196 A. 2d 371 (1964), and that line of cases which suggest that the Election Code be given a liberal construction. See *Ross Nomination Petition,* 411 Pa. 45, 190 A. 2d 719 (1963), and cases cited therein. In my view, such reliance is misplaced.

In *Altoona,* supra, this Court was concerned with that section of the Election Code which deals with the *substitution* of a nominee following the creation of a vacancy. See Act of June 3, 1937, P. L. 1333, §981(a), 25 P.S. §2941. In the instant case, we are concerned with a separate section dealing with the distinguishable problem of the timeliness of the *withdrawal* and the creation of the vacancy itself. See id. at §978, 25 P.S. §2938. Not only are the sections applicable to substitution and withdrawal separate and distinct, but a moments reflection reveals that the considerations relevant to their construction are equally inapposite.

*Altoona,* supra, presented this Court with a situation in which the candidate of one of the major parties had withdrawn from the mayoralty race.[2] Thus a va-

issue, the result which the majority reaches can only be explained by assuming that the Court decided sub silentio that the lack of acknowledgement is without significance. As I view the merits of the instant case, it is not necessary to reach this issue, and accordingly I offer no opinion on the matter.

[2] No objections were interposed to either of the withdrawals in *Altoona,* and the County Board of Elections permitted them. *Altoona Mayor Substitute Nomination Case,* 413 Pa. 305, 307 n.1, 196 A. 2d 371, 372 n.1 (1964). Its action in permitting such withdrawals was not contested and the issue of their timeliness was not before this Court in *Altoona.*

cancy existed. A mandatory construction of the filing provisions of the Pennsylvania Election Code, under those circumstances, so as to deny *substitution,* "in reality, would have resolved the election in advance . . . and not at the polls" where such matters were intended to be resolved. *Altoona Mayor Substitute Nomination Case,* 413 Pa. 305, 313, 196 A. 2d 371, 375 (1964). We concluded, therefore, that the Legislature could not have intended the filing requirements for substitution to have been construed in a fashion so as to deny the voters freedom of choice in the election.[3]

In the instant case, however, a construction of that section of the election code pertaining to the timeliness of *withdrawals* as being mandatory would have no such result. Were we to affirm the court below, the names of both candidates regularly nominated in the primary election would appear on the ballot. That freedom of choice which was not present in *Altoona* and which the election code seeks to preserve would not be denied the voters of Northumberland County by such affirmance. Whether or not the candidate seeking withdrawal will serve if elected is a matter of mere conjecture. Yet the majority, in order to conclude that the instant case is governed by the same considerations which prompted our decision in *Altoona,* indulges in just such speculation. In so doing, the majority ignores those provisions of the election code more directly suited to meet that

---

[3] It should be noted that *Altoona* presented no novel question. This Court previous to that decision had permitted late substitution in order to secure to the voters that choice which the election code was intended to provide. See *County Commissioner Substitute Nomination Case,* 383 Pa. 372, 118 A. 2d 750 (1955). My disagreement with the majority's disposition of the instant case should not be taken as indicating any belated doubts as to the propriety of the *Altoona* and *County Commissioner Substitute Nomination Case* decisions.

possible contingency[4] and at the same time exposes the electorate to the possibility of political abuse and undesirable practices.

What the majority fails to realize is that the various time limitations in the election code, extremely numerous, were designed to provide a statutory calendar not only for the orderly administration of the elective process but also, in many instances, to obviate potentially abusive practices. I do not purport at this time to analyze each of the various limitations but I do object, however, to the indiscriminate extension of the reasoning of the *Altoona* case by the majority without such analysis.

In my view, a careful consideration of the time limitation here involved reveals that the majority needlessly disrupts the legislative election timetable and thereby does a great disservice to the electorate. Were a candidate permitted to withdraw at any time prior to the election, party leaders may be tempted to contrive such belated withdrawals in order to secure the election of those who might otherwise be unable to withstand the exposure and public scrutiny of a more extended campaign. Were both major parties able to secure belated withdrawals from subservient candidates in the same election, then the public would be denied any meaningful choice in light of the possible lack of time for a thorough examination and consideration of the qualifications of the substituted candidates.

A more realistic potential abuse, equally to be condemned, made possible by the decision rendered today, is the opportunity afforded party leaders to test the winds of public sentiment in determining whether the time is propitious to impose an unqualified office-seeker on the public and thereby nullify the primary election. If due to the intervention of some fortuitous

---

[4] See Act of August 9, 1955, P. L. 323, §409, 16 P.S. §409; see also Act of July 28, 1953, P. L. 723, §409, 16 P.S. §3409.

event, such as the death or disability of a strong opponent or a late tide of public attraction to a particular party label, the prospects for victory of one side are significantly improved, great pressure may now be brought to bear on the duly selected nominee to withdraw in favor of a less qualified person whom the party leaders may seek to reward. Unfortunately, these potential abuses are now realistic possibilities under the majority's reading of the Pennsylvania Election Code.

The majority seeks support from those cases which provide that the Election Code "must be liberally construed so as not to deprive an individual of his right to run for office, or the voters of their right to elect a candidate of their choice." *Ross Nomination Petition,* 411 Pa. 45, 48, 190 A. 2d 719, 720 (1963). Neither of these factual circumstances is present in the instant case. Moreover, I fear that the construction which the Court today adopts will promote over the long run neither of these objectives. Rather, it may well promote a complete disregard, under the guise of liberality, for all the time limitations in the code and thereby provide an unfair advantage to those who may seek to subvert the democratic process. By affording the opportunity for such maneuvering, this Court today denies the electorate that protection which the spirit of liberality was designed to afford. What the majority has done in effect is to nullify all the time limitations in the code without a full appreciation of the purposes for which many were provided. The majority justifies its construction of the filing requirement for withdrawal as directory as necessary to avoid an unreasonable result. In my view, such an approach is unfortunate in that no such result would obtain by requiring compliance with the explicit statutory command.

As was pointed out by Justice COHEN in his dissent in *Altoona,* "it is not too much to ask of a candidate that he not unduly disrupt the election machinery *if he*

*wishes to withdraw* and that he act, if at all, before a certain date. The electorate is not confronted with an unavoidable vacancy as in the case of death, and it rightfully demands that no vacancy be permitted by withdrawal less than sixty-five days before an election [the period then provided for by the Code]; otherwise, candidates could play fast and loose with our election processes and make a mockery of them as was done here." *Altoona Mayor Substitute Nomination Case,* 413 Pa. 305, 314-15, 196 A. 2d 371, 375-76 (1964). (Emphasis added.) Although not relevant to the issues presented in *Altoona,* these observations are particularly pertinent to those raised by the instant case.

Accordingly, since the record supports the finding that the withdrawal was not timely, a finding which the majority does not contest, I would affirm the action of the court below and the County Board of Elections.