## Oberleitner v. Bolinger

*Perry L. Reeher*, for plaintiff.
*Edward M. Rea*, for defendants.

LYON, J., April 18, 1967.—Before the court for determination are defendants' preliminary objections to a complaint in mandamus in which plaintiff seeks to compel defendants, who comprise the county board of elections, to print the official ballots of the Republican Party for the spring primary election of 1967 without the name of John L. Oberleitner appearing thereon as a candidate for nomination to the office of Mayor of the City of New Castle. The preliminary objections are in the nature of a demurrer and contend that under law, the facts alleged in the complaint do not entitle plaintiff to the relief prayed for.

Preliminary objections in the nature of a demurrer admit as true all well pleaded facts averred in the complaint, but not the pleader's conclusions or averments of law: Erie v. Gulf Oil Corporation, 395 Pa. 383, 150 A. 2d 351 (1959) ; Savitz v. Weinstein, 395 Pa. 173, 149 A. 2d 110 (1959) ; Silver v. Korr, 392 Pa. 26, 139 A. 2d 552 (1958) ; Kelly v. Philadelphia , 382 Pa. 459, 112 A. 2d 238 (1955) ; Narehood v. Pearson, 374 Pa. 299, 96 A. 2d 895 (1953). This rule requires that the following facts be considered as established for the purpose of this proceedings: Plaintiff filed his nomination petition as a candidate for the Republican nomination for the office of Mayor of the City of New Castle on March 7, 1967. Prior to March 14, 1967, the last day for a candidate to withdraw, plaintiff decided, according to the complaint, to file a written request with defendants to withdraw his name as a candidate, but was precluded from doing so because severe illness incapacitated him. Thereafter on March 27, 1967, plaintiff filed a proper written request for withdrawal with defendants, who, on the following day, refused to honor his petition. He now neither wants the nomination nor will he accept it if elected. His final complaint is that defendants' action in refusing his request will force him into a primary political campaign against his wishes and thereby cause both him and his family great emotional and mental anguish. The complaint concludes by requesting judgment commanding defendants to omit plaintiff's name as a candidate on the official Republican ballot for the May 16, 1967, primary election.

Defendants cite Shroyer v. Thomas, 368 Pa. 70, 81 A. 2d 435 (1951), as authority requiring the denial of plaintiff's request for withdrawal. But the holding of that case is inapplicable, for it merely interprets the operation and effect of a provision of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, not

pertinent to the facts in the present case. In that case, a candidate at a primary election for the office of county commissioner died three days before the last day permitted by statute for candidates to withdraw petitions. His widow timely filed with the county board of elections a paper requesting the withdrawal of her late husband's name as a candidate. This request the county board of elections refused and, on the following day, proceeded, over protest, in the normal, customary manner which eventually would have caused decedent's name to be printed on Republican primary ballots. On appeal to the Pennsylvania Supreme Court, the action of the board of elections was affirmed. The court held that section 917 of the Pennsylvania Election Code was controlling. This section provided that where a death occurred before the day of the primary, the original signers of the deceased's nominating petitions, or a majority of them, may sign another petition proposing a new candidate for the office. Implicit in the court's opinion is the conclusion that death of a candidate before a primary election does not effect a withdrawal of his candidacy; that decedent's name can be omitted from primary ballots only through use of the substitution procedure provided by this section of the election code.

But the present case is ruled by section 914 of the Pennsylvania Election Code. It provides procedure for withdrawal by a living candidate and requires that for a withdrawal to be legally effective, the candidate must file in the office in which his nomination petition is filed, on or before the seventh day succeeding the last day for filing nomination petitions, a written withdrawal request signed by him and acknowledged before an officer empowered to administer oaths. Unlike the Shroyer case, where the withdrawal request was timely filed by the widow of the deceased candidate, the legal issue engendered by the facts of the

present case is whether a candidate seeking the Republican nomination for the office of mayor may have his name omitted as such candidate on the primary ballot where his withdrawal request was filed with the board of elections 13 days after the time fixed for withdrawal by section 914 of the Pennsylvania Election Code. Determination of this issue requires interpretation of section 914 of the Pennsylvania Election Code relative to whether this provision is mandatory so as to preclude late withdrawal regardless of reason, or merely directory and, therefore, subject to equitable principles. A directory provision is one the observance of which is not necessary to the validity of the proceedings: American Labor Party Case, 352 Pa. 576, 44 A. 2d 48 (1945). Counsel for neither party cited any appellate court authority considering the subject of belated withdrawal by a candidate in a primary election.

The Supreme Court recently interpreted a similar provision of the election code which provides for withdrawal of nominees before the general or municipal election. The candidate who desired to withdraw in Perles v. Hoffman, 419 Pa. 400, 213 A. 2d 781 (1965), was the duly elected nominee for the office of county commissioner. His wife, who was suffering from emphysema, was advised by her physician to move to a dry climate. He thereupon decided to withdraw as a candidate and move his wife and eight children to Albuquerque, New Mexico. But through fortuitous circumstances, his withdrawal request was not actually filed with the board of elections until three days after the last day provided by section 978 of the Pennsylvania Election Code for candidates to withdraw from a general or municipal election contest. The board of elections refused his late withdrawal request and was affirmed by the Court of Common Pleas of Northumberland County. On appeal, the court of com-

mon pleas was reversed, and the Supreme Court ordered the Northumberland County Board of Elections to remove his name as a candidate from the ballots in the general election. Section 978, placing a time limitation on the right of withdrawal, was held specifically to be merely directory and not mandatory. Chief Justice Bell, who wrote the majority opinion, stated at page 405: "This Court has held, we repeat, that 'the Election Code must be *liberally* construed so as not to deprive an individual of his right to run for office, or the voters of their right to elect a candidate of their choice' ".

Careful analysis of the majority and dissenting opinions in the Perles case indicates concern by that court of possible political abuse and undesirable practices stemming from allowance of belated withdrawals. But the judgment of the majority apparently was that an even greater evil would result from refusing all belated withdrawals where the net result would be denial to electors of a choice between two bona fide candidates: Altoona Mayor Substitute Nomination Case, 413 Pa. 305, 196 A. 2d 371 (1964); Perles v. Hoffman, supra. Refusal to accept the late withdrawal of a nominee who could not serve if elected would deny a political party the right to place the name of a substitute nominee upon the ballot and, from a practical viewpoint, in most cases, would be paramount to deciding the election contest.

Defendants admit, as they must, that under the authority of Perles v. Hoffman, supra, the withdrawal provisions of the Pennsylvania Election Code relative to a general or municipal election are directory, but argue that similar provisions contained in section 914, applicable only to primary elections, are mandatory. As authority for this proposition, defendants cite McKim v. Commonwealth, 43 D. & C. 398 (1941), and In re: Kujawski, 29 Erie 84 (1939), both of which held

section 914 to be mandatory. These lower court cases were decided before and are inconsistent wtih the holding of Perles v. Hoffman, supra. It would be incongruous to hold that a nominee in a general or municipal election can withdraw belatedly while at the same time holding that a candidate in a primary election may not do so. Moreover, although some courts prohibit withdrawal after nomination, they nevertheless recognize the right of one who has filed his nomination papers to withdraw prior to the primary election: State ex rel. Thatcher v. Brodigan, 37 Nev. 458, 142 Pac. 520 (1914).

Admittedly, the policy considerations involved in determining whether to allow belated withdrawals in general or municipal elections are different from those concerned with allowance of late withdrawals in primary contests. Where a candidate in a primary election voluntarily withdraws, the law makes no provision for placing on the ballot the name of a substitute candidate. Accordingly, the right of voters to choose between two bona fide candidates is not a consideration in a primary election for allowance of late withdrawals. But to hold that those who refuse to continue in the race, if nominated, nevertheless must be voted on, would nullify the whole primary election in cases where such a candidate receives the highest number of votes. Under such circumstances, a political party, not the electors, does the actual nominating and places the name of its substitute candidate on the general or municipal election ballot: Act of June 3, 1937, P. L. 1333, secs. 980, 981, as amended; 25 PS §§2940, 2941. It is conceivable also that in multi-candidate contests, refusal of late withdrawals might result in nomination of one who might not have received the highest number of votes if electors had considered only the bona fide candidates.

But to hold that a primary candidate may withdraw at any time before the election without sound and sufficient reason would expose the electorate to possibility of political abuse and undesirable election practices. It would permit the unscrupulous to file as a candidate in order to bargain for favor and promise of reward for quitting the race. It conceivably might open the door to rigging of primary elections through political dealings between party factions and primary opponents whereby belated withdrawals are attempted and contrived in order to secure the election of a less capable candidate who otherwise could not command a plurality of votes. Also within the scope of possible political abuse is the chance that some candidates might be forced to run the gauntlet of coercion, fear and intimidation as long as possibility of withdrawal exists. Equally to be condemned is the opportunity afforded a possible candidate to test the whims of public sentiment before making an actual, final decision relative to seeking public office. A citizen is under no obligation to seek election to office and may be a candidate or refuse to be such at his option. But, having exercised his option by filing nomination petitions for public office, the electorate has the right to demand of him not to play fast and loose with orderly election processes and make a mockery of them.

From the foregoing discussion, it is apparent that the majority of possible political abuses inherent in allowance of late withdrawals is equally applicable to general or municipal and primary elections. However, it cannot be claimed that the contravailing social advantage of insuring the electorate a choice between two bona fide candidates, which is the principal reason assigned for allowance of late withdrawals in general or municipal elections, is applicable in any respect to primary elections. In fact, it must be admitted that allowance of a late withdrawal in a primary election

might under some circumstances determine the election just as effectively as disallowance of a late withdrawal might, as a practical matter, determine a general or municipal election. This tends to illustrate, as before indicated by analysis of the advantages and disadvantages inherent in the allowance of late withdrawals, that in primary elections the weight of equities favoring such withdrawals is nearly equaled by the weight of those concomitant opposing equities which would afford opportunity for possible political abuse and undesirable election practices. For this reason, when considering applications for belated withdrawal as a candidate in a primary election, courts should proceed with caution and disallow such applications where election abuses are suspect in the slightest degree.

However, where a primary candidate shows a bona fide decision to withdraw, but proper withdrawal papers were not timely filed with the board of elections for some legally acceptable reason, the courts will consider his application after expiration of the statutory time fixed for withdrawal by the election code. Unexplained delay in the timely filing of withdrawal papers with the board of elections raises a presumption that the decision to withdraw is motivated by an invalid and legally insufficient reason. The weight of the presumption increases according to the length of the delay. The burden of proving by a preponderance of the evidence a bona fide decision to withdraw together with a legally sufficient reason for failure to promptly file withdrawal papers rests upon the candidate. Only under extraordinary circumstances where a clear case exists will courts allow a belated withdrawal in primary elections.

Time limitations in the election code have given rise to controversy under other circumstances where courts have been required to determine whether the

particular time limitation in question is directory or mandatory. Where section 981(b) of the Pennsylvania Election Code provided that substituted nomination certificates shall be filed at the proper office at any time prior to the day on which the printing of the ballots started, and it appeared that the ballots were printed and the military ballots had actually been mailed, it was ordered that the name of the substitute candidate be placed on the ballot by use of stickers: County Commissioner Substitute Nomination Case, 383 Pa. 372, 118 A. 2d 750 (1955). The court reached a similar result in Altoona Mayor Substitute Nomination Case, supra. In Koch Election Contest Case, 351 Pa. 544, 41 A. 2d 657 (1945), it was held that under the circumstances there present, the candidate in a general election could take an appeal after expiration of the time limitation in the election code by means of a petition filed nunc pro tunc within a reasonable time. The statutory time limit within which an election expense account is to be filed has been held merely directory, and our Lawrence County Court of Common Pleas has permitted late filing on several occasions: Commonwealth v. Schrotnick, 240 Pa. 57, 87 Atl. 280 (1913); In re: Expense Account of Everett Peak, June term, 1957, miscellaneous docket; In re: Expense Account of E. Gene Schweinsburg, September term, 1961, miscellaneous docket.

For the reasons stated in this opinion, a complaint in mandamus is a proper procedure against the board of elections to secure a belated withdrawal in a primary election. The complaint states a valid cause of action: Perles v. Hoffman, supra. To succeed in this action, plaintiff must produce evidence showing an immediate, well-defined and complete legal right to withdraw as a candidate after expiration of the time for withdrawal as prescribed by section 914 of the

Pennsylvania Election Code: Purcell v. Altoona, 364 Pa. 396, 72 A. 2d 92 (1950).

Under the circumstances present in this case, the board of elections cannot be faulted for refusing plaintiff's petition for late withdrawal. The duties and powers of an election board were specifically limited in Shroyer v. Thomas, supra. Whether in the light of more recent decisions the Shroyer case still constitutes a full and correct statement of the law in this respect is not before the court in this proceedings, and is not decided.

ORDER OF COURT

And now April 18, 1967, defendants' preliminary objections are severally overruled and dismissed. Defendants may file an answer to the complaint on or before April 19, 1967. The court hereby sets Thursday, April 20, 1967, at 9:30 a. m. in court room number two, as time for hearing in this case.