Re: Withdrawal of the Candidacy of John Stauffer, Jr., as Candidate for Representative to the General Assembly.
Re: Substitution of Richard T. Schulze for John Stauffer, Jr., as a Candidate for Representative to the General Assembly.

Argued September 30, 1970, on stipulated facts before President Judge BOWMAN and Judges CRUMLISH and BARBIERI, sitting as a panel.

*G. Thomas Miller, Esq.,* for objector.

*Edward Friedman, Esq.,* Counsel General of the Commonwealth for the Secretary of the Commonwealth, with him *Fred Speaker,* Attorney General.

*William H. Lamb, Esq.,* for the Republican Party of Chester County, and for John Stauffer, Jr., and Richard T. Schulze.

OPINION BY JUDGE BARBIERI filed October 23, 1970:

Before this Court is the question as to who is the legally constituted Republican candidate for Representative to the General Assembly from the 157th Legislative District of the Commonwealth. The issue is raised on two "objections", purportedly filed under the Pennsylvania Election Code (Act of June 3, 1937, P. L. 1333, as amended, 25 P.S. 2600). The first of these

objections was to the withdrawal by Representative John Stauffer, Jr., of his candidacy for the seat at issue. This objection was filed by Stauffer's Democratic opponent, Michael F. Beausang, Jr., with the Prothonotary of this Court on September 18, 1970. The second objection, also filed by Beausang four days later, on September 22, 1970, protests the substitution, by certificate filed on September 21, 1970, of Richard T. Schulze, nominated as a candidate to fill the vacancy caused by the withdrawal of Stauffer. The objections are based upon the withdrawal's being filed less than 85 days, and the substitution less than 75 days, before the general election, time limitations which are set forth, respectively, in Sections 978 and 981 of the Code (25 P.S. 2938 and 2941).

At the hearing, held before the above-named three-judge panel of this Court on September 30, 1970, appearances and arguments, with briefs, were presented on behalf of objector, Michael F. Beausang, Jr., by the Attorney General on behalf of the Secretary of the Commonwealth, and by the Solicitor of the Chester County Republican Party, for the Party and also as attorney for John Stauffer and Richard T. Schulze. After consideration of the arguments of counsel in the light of facts stipulated by them, the Court, by BARBIERI, J., entered the following order: "AND NOW, this 30th day of September, 1970, the objections of Michael F. Beausang, Jr. in the above captioned matters are dismissed; opinion to be filed."

The Opinion of the Court follows.

The stipulated facts establish that the chain of events which culminated in the withdrawal of Stauffer and the substitution of Schulze was initially triggered by the death on August 7, 1970 of the Honorable G. Robert Watkins, Representative to Congress from the Ninth Congressional District. Following a writ for a

special election to fill Watkins' vacancy, issued on August 17, 1970, John H. Ware, III, resigned as Pennsylvania Senator from the 19th Senatorial District on August 28, 1970, and was then nominated as the Republican candidate for the post of Representative to Congress from the Ninth Congressional District by certificate filed on August 31, 1970. On the same day, a writ was issued for a special election to select a Republican candidate for the Pennsylvania Senate to serve out Senator Ware's unexpired term and for a new term thereafter. On September 4, 1970, John Stauffer, Jr., was duly nominated as the Republican candidate for the office of State Senator from the 19th Senatorial District, whereupon he withdrew his nomination for Representative to the General Assembly from the 157th Legislative District. This withdrawal was accepted by the Secretary of the Commonwealth on September 15, 1970. Richard T. Schulze was then substituted for Stauffer by the Republican Party, by substituted nomiination certificate filed, as we have previously noted, on September 21, 1970.

It was also stipulated by Beausang at oral argument that his objection to the substitution could be marked "withdrawn", should final adjudication be that the withdrawal of Stauffer was legally permissible. In making this concession, Beausang makes clear that he does not wish to run unopposed, or seek by judicial decree to deprive the voters of their right to have a two party general election for Representative. Beausang also concedes that if Stauffer's withdrawal and the substitution for him had been effected within the legislative time limitations specified in Sections 978 and 981 of The Election Code, there could be no valid objection thereto. In short, the objector-petitioner's hope for relief is totally based upon his contention that the two time limitations in question, at least under the circum-

stances as they appear in this case, should be construed to be mandatory to the extent that Stauffer's name remain by annulling his withdrawal and Schulze's substitution. Beausang takes this position recognizing that, if Stauffer cannot withdraw as candidate for Representative, he will be running at the same time for Senator and Representative. This position would take from both voter and candidate the power to effectively designate who should fill each office. In fact, should Stauffer be the chosen candidate in each of the two contests and be elected to serve in both houses of the General Assembly, then he, and not the voters, would decide which seat he would fill, because in such event he would be forced to resign from one of the two posts to which he had been elected. Also, the resignation would set up the requirement that another election be held.

In our opinion, the absurdities which would result if Beausang's contention were accepted are not consistent with the legislative intent. We are not powerless to forestall what could become a chaotic state of affairs, particularly since liberality of construction in passing upon provisions of the Election Code should prevail so as not "to deprive the *electorate* of a choice between candidates. . .". *Perles v. Hoffman,* 419 Pa. 400, 213 A. 2d 781 (1965). (Emphasis added)

Certain provisions of the Code bear upon the issues presented in this proceeding.

Withdrawal is provided for in Section 978 of the Code (25 P.S. 2938), the pertinent parts of which read: "*Any person* who has been nominated by any political party . . . as a candidate for . . . any State office . . . *may withdraw* his name from nomination by request in writing, signed by him . . . and filed in the office of the Secretary of the Commonwealth . . . Such written withdrawals shall be filed with the Secretary of the Commonwealth . . . *at least eighty-five (85) days previous*

*to the day of the general or municipal election. . .".*
(Emphasis added)

The substitution provisions in Section 981 (25 P.S. 2941), understandably fix a time limitation on the filing of a substituted nomination certificate ten days shorter than that provided for withdrawal and reads, in part: "(a) Substituted nomination certificates to fill vacancies caused by the withdrawal of candidates nominated at primaries . . . shall be filed with the Secretary of the Commonwealth . . . *at least seventy-five (75) days before the day of the general or municipal election. . .".* (Emphasis added).

There is also another provision in the Code, Section 979 (25 P.S. 2939), which fully authorizes the kind of substitution described in Section 981. This provision reads in part: "Any vacancy happening or existing after the date of the primary in any party nomination, by reason of the death *or withdrawal* of any candidate after nomination, . . . may be filled by a substituted nomination. . .". (Emphasis added)

Finally, another apparent limitation upon substitutions is set forth in Section 1006 (25 P.S. 2966), which reads: "As soon as any substituted candidate shall have been duly nominated, *at any time prior to the day on which the printing of ballots is started,* his name shall be substituted in place of that of the candidate who has died or *withdrawn."* (Emphasis added)

Because it is stipulated that, as of September 30, 1970, the date of the hearing, the printing of ballots had not yet started, and because no issue is raised herein as to the validity of Schulze's selection as a substitute candidate, Sections 979 and 1006 are not of primary concern in this proceeding. These provisions, as part of the whole legislative pattern, however, exhibit the concern of the legislature for facilitating withdrawal and substitution.

At the outset, we note that our Supreme Court, in construing provisions in the Election Code has stated that the overall purpose of the Code is to provide a freedom of choice and a fair election. Furthermore, it appears to us to be within the spirit of the Code that the best candidates be put forward by their parties. In exercising their party prerogatives and responsibilities, the appropriate officials of the Republican Party in this case presumably settled upon Stauffer as the Party's best candidate to fill the vacancy caused by the resignation of Senator Ware. In order to carry out this Party decision, it then became necessary for Stauffer to vacate his candidacy for the post of Representative to the State General Assembly in order to run for Ware's Senatorial vacancy. This brought up the Party's responsibility to provide a new candidate in lieu of Stauffer.

Viewing this chain of events, objector-petitioner asserts that the Republican Party "has now attempted to hand-pick the candidates for U. S. Congress, State Senator and State Representative, without any voter approval. . .", which he urges is "in violation of the express provisions of the Code." Reference to the Code establishes the futility of these assertions. Indeed, every step taken by the political authorities in effecting the withdrawal of Stauffer and the substitution of Schulze is authorized by provisions in the Code, and, as we have previously noted, Beausang frankly admits that if these steps were taken within the time limitations in Sections 978 and 981 the re-arrangement of candidates for the November General Election would be unassailable.

As against Beausang's contention that we should construe the time limitations in the sections in question as mandatory rather than directory, we note that the pertinent decisions of our Supreme Court, declar-

ing that the Code must be construed liberally, have held on the facts in each case, without exception, that provisions such as the limitations in Sections 978 and 981 were merely directory and not mandatory. *Perles v. Hoffman, supra; Altoona Mayor Substitute Nomination Case,* 413 Pa. 305, 196 A. 2d 371 (1963) ; *County Commissioner Substitute Nomination Case,* 383 Pa. 372, 118 A. 2d 750 (1955).

In *Perles,* where it was contended that the time limitation on a withdrawal was mandatory, as compared with the time limitation on a substitution, which was deemed to be directory, Mr. Chief Justice BELL, in delivering his opinion for the majority, stated: "If the substitution provision of §981 is construed as directory only, as was held in *Altoona,* there would be an apparent inconsistency if the withdrawal provision of §978 is considered mandatory. The reasoning applying to the one applies equally to the other. In both cases the practical result of a mandatory and literal construction of the provision would be to deprive the voters of a real choice between candidates." 419 Pa. at 404.

We find no merit in objector-petitioner's contention that *Perles* and the other Supreme Court decisions in question may be factually distinguished. Whether or not the factual circumstances here are significantly different from those in the Supreme Court cases, there is no Code provision which authorizes objection or provides any other remedy that would limit the free right of withdrawal which is granted by the Code to any nominee. This state of the law certainly should be no surprise to anyone, since it would indeed be an exercise in stultification for this Court to attempt to negate a withdrawal, only to see a candidate resign if elected. This, of course, is aside from the inconceivable notion that in our system of election a man may be required

against his will to run for office, or be elected to a post in which he has in advance refused to serve. If, as is so obvious, the privilege to withdraw cannot be denied, and a vacancy, therefore, is inevitable when this privilege is exercised, it follows that the substitution must be permitted. If it is argued that the time limitations in Sections 978 and 981 are rendered meaningless by our ruling, we believe the answer to be that the time limitations are meant to provide time schedules to make as orderly as possible such adjustments in the slate of nominees as must be made between the primary and general election. An obvious purpose for the time limitations fixed for withdrawals and substitutions would be to avoid the kind of ballot preparation and printing problems which we do not have here.*

Accordingly, for the reasons expressed herein, we concluded that the Secretary of the Commonwealth properly accepted the withdrawal by John Stauffer, Jr., of his candidacy for Representative to the Pennsylvania General Assembly from the 157th Legislative District and the substitution in his place of Richard T. Schulze, and that, therefore, the objections of Michael F. Beausang, Jr., to the withdrawal and substitution should be dismissed.

---

* Even in a case where the ballots had been printed before the death of a candidate, the substitution limitation was held to be merely directory and an order to accept the substitute nominee and to reprint the ballots was approved. *The County Commissioners Substitution Nomination Case, supra.*