583 A.2d 1258

**In re Petition of G. Scott DIETTERICK, III.**

Commonwealth Court of Pennsylvania.

Heard Oct. 17, 1990.

Decided Oct. 18, 1990.

Designated as Opinion to be Reported Dec. 12, 1990.

Robert J. Kunec, Wilkes–Barre, for petitioner.

Pamella J. Raison, Chief Counsel, Harrisburg, for respondent.

KELLEY, Judge.

G. Scott Dietterick, III, is the nominee of the Republican Party in District 120 of the House of Representatives of the General Assembly of the Commonwealth. The 120th District is entirely within the boundary of Luzerne County. Dietterick seeks withdrawal of his name as candidate and an order requiring the Luzerne County Board of Elections to remove his name from the ballot at the ensuing general election of November 6, 1990. The petition was filed on October 11, 1990.

Dietterick was nominated by the Republican Party at the primary held May 15, 1990, winning the primary over four other candidates. Prior to circulation of the nomination

petition, Dietterick was arrested and charged with falsifying insurance documents.

Following Dietterick's victory in the primary, his trial was set for September 24, 1990. The trial ended on October 5, resulting in convictions on 19 counts of forging documents. Dietterick has not yet been sentenced. On October 11, Dietterick filed this petition, seeking to withdraw from the election. The Bureau of Elections (Bureau) appeared and objected. A hearing was held on October 17, 1990, at 1:30 p.m. A substitution nomination petition was filed by the Luzerne County Republican Party on October 16 and docketed at 329 M.D. 1990. Hearing thereon was scheduled for October 19 at 9:00 a.m.

The Pennsylvania Election Code[1] contains several sections dealing with withdrawal and substitution of candidates. We begin with a review of prior caselaw interpreting these sections. Section 981(b)[2] provides that in the event of death of a candidate, substituted nomination certificates must be filed prior to the day on which the printing of ballots is started. In *County Commissioner Substitute Nomination Case*, 383 Pa. 372, 118 A.2d 750 (1955), our Supreme Court held that the requirement was directory and not mandatory, and ordered the substitution with only eight days remaining until the election.[3]

In that case, Justice Musmanno stated that "[i]t obviously requires very little reflection to come to the conclusion that to demand that the people vote on a dead candidate when a live person is available and qualified under the law is absurd and unreasonable." *Id.*, 383 Pa. at 383, 118 A.2d at 755 (Musmanno, J., concurring).

1. Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2600–3591.
2. 25 P.S. § 2941(b).
3. The candidate died on October 24, 1955. The printing of ballots had begun on October 5 and was completed on October 25. Military absentee ballots had been sent prior to the candidate's death. The common pleas court heard the case on October 28 and the Supreme Court affirmed on October 31. The election was scheduled for November 8, 1955.

Section 981(a)[4] provides that in cases of withdrawal of candidates duly nominated at primaries, the substituted nomination papers shall be filed at least 75 days before the general election. Our Supreme Court again held that this requirement was merely directory and not mandatory. *Altoona Mayor Substitute Nomination Case*, 413 Pa. 305, 196 A.2d 371 (1964).

The Court quoted Justice Musmanno, and stated that "[s]urely, it is no more reasonable or less absurd to offer to the electorate the name of a publicly withdrawn candidate who was already publicly replaced by the party with authority to make substitution." *Id.*, 413 Pa. at 312, 196 A.2d at 374. A vigorous dissent was raised by Justice Cohen, however, who drew a distinction between death and withdrawal, stating:

> The electorate is not confronted with an unavoidable vacancy as in the case of death, and it rightfully demands that no vacancy be permitted by withdrawal less than sixty-five days before an election; otherwise, candidates could play fast and loose with our election processes and make a mockery of them as was done here.

*Id.*, 413 Pa. at 315, 196 A.2d at 376 (Cohen, J., dissenting).

The section of the code dealing specifically with withdrawals also provides that, to be effective, written withdrawals must be filed with the Secretary of the Commonwealth at least 85 days prior to the election. Section 978(a), 25 P.S. § 2938(a). Again, our Supreme Court has construed the time requirement to be merely directory and not mandatory. *Perles v. Hoffman*, 419 Pa. 400, 213 A.2d 781 (1965).

The Court held that if the substitution provision of § 981 is construed as directory only, there would be an apparent inconsistency if the withdrawal provision of § 978 is considered mandatory. *Id.*, 419 Pa. at 404, 213 A.2d at 783. Again, a dissenting opinion was filed, with Justice Roberts stating that:

> Were a candidate permitted to withdraw at any time prior to the election, party leaders may be tempted to contrive

4. 25 P.S. § 2941(a).

such belated withdrawals in order to secure the election of those who might otherwise be unable to withstand the exposure and public scrutiny of a more extended campaign. Were both major parties able to secure candidates the public would be denied any meaningful choice in light of the possible lack of time for a thorough examination and consideration of the qualifications of the substituted candidates.

*Id.,* 419 Pa. at 409, 213 A.2d at 781 (Roberts, J., dissenting).

Finally, a new section of the Code was added in 1980, which states that, upon petition to the court of common pleas or Commonwealth Court, depending on which has jurisdiction, without mention of any time limit, the court "shall order the withdrawal of said candidate's name for nomination or election, except upon a showing of special circumstances." Section 978.4, added by the Act of July 11, 1980, P.L. 591, 25 P.S. § 2938.4. We are given no guidance as to what might constitute "special circumstances."

The addition of Section 978.4 to the Election Code, by its lack of reference to time periods, seems to recognize that time limitations do not have the force of law. It also mandates that the court shall order the withdrawal, *except upon a showing of special circumstances* (emphasis added). We view this section as conferring discretion on the court and are now left to decide what constitutes "special circumstances."

■ The Bureau urges that the status of the printing of the ballots constitutes "special circumstances" and has been so recognized by the Bureau's internal procedures. We have found no case, regulation or legislative history of the section in question that confirms this contention. Nevertheless, we are convinced that the legislature intended that the words "special circumstances" have some meaning, and, in the absence of a showing of contrary legislative intent, believe that the interpretation sought by the Bureau is a reasonable one.

We are assisted in this view by Section 1006 of the Code [5], which states that:

As soon as any substituted candidate shall have been duly nominated, at any time *prior to the day on which the printing of the ballots is started,* his name shall be substituted in place of that of the candidate who has died or withdrawn. (Emphasis added.)

In this case, the process of printing the ballots has already begun. We heard competent testimony, however, that replacement labels or "stickers" could be obtained and installed prior to the election at a reasonable cost, which, in fact, petitioner has offered to help defray. This Court has serious doubts about the effectiveness of sticker paste-overs for candidates names; however, we agree that the printing of the ballots constitutes one of the "special circumstances" which this Court must consider.

A more serious problem is that of absentee ballots. A total of 286 absentee ballots have been sent out by Luzerne County containing Dietterick's name. Of these, 53 had already been returned as of October 17. The deadline for receipt of completed absentee ballots is November 2. Testimony showed that if withdrawal and substitution were allowed, new absentee ballots could be sent within two or three days, but only those which had been returned before November 2 could be counted. Of the absentee ballots, 28 have been sent to military personnel. The witness admitted that it was doubtful the amended military absentees could be returned before the November 2 deadline.

Section 1308(a) of the Code [6] addresses the timeliness of absentee ballots, stating in pertinent part:

No absentee ballot shall be counted which is received in the office of the county board of elections later than five o'clock P.M. on the Friday immediately preceding the primary or November election.

5.  25 P.S. § 2966.
6.  Added by the Act of March 6, 1951, P.L. 3, 25 P.S. § 3146.8(a).

This Court has construed Section 1308(a) as mandatory. *Clark Appeal*, 85 Pa.Commonwealth Ct. 594, 483 A.2d 1033 (1984). The Court discounted ballots received after the Friday deadline, holding that the lack of timeliness of the ballot constituted a substantive violation of the Code.

If a withdrawal and substitution were allowed in this case, it has been admitted that reprinted ballots would not be received before the deadline; thus they could not be counted.

It is clear that the absentee ballot situation also constitutes a "special circumstance" which must be considered. In so considering it, we are of the opinion that the election process has already commenced and cannot now be reversed without violating the strict timeframe provided for absentee ballots.

The purpose of election laws is to secure "freedom of choice and to prevent fraud and corruption; to obtain a fair election and an honest election return; to insure fair elections, or an equal chance and opportunity for everyone to express his choice at the polls; and to secure the rights of duly qualified electors and not to defeat them." *Koch Election Contest Case*, 351 Pa. 544, 41 A.2d 657 (1945).

We do not fault Dietterick for desiring to withdraw. His concerns for his family and the integrity of the governmental process, while both laudable and understandable, simply do not justify allowing withdrawal at this late date.

Accordingly, the petition to withdraw is denied.

ORDER

NOW, this 18th day of October, 1990, the petition for order of withdrawal of petitioner's name as candidate for representative and for order of withdrawal of his name from the ballot for the general election is denied.