In re: Election for Representative in the GENERAL ASSEMBLY FROM THE 158TH DISTRICT in the General Election of November 4, 2014.

Appeal of: Cuyler Walker.

Commonwealth Court of Pennsylvania.

Argued Sept. 26, 2014.

Decided Oct. 1, 2014.

Publication Ordered Feb. 11, 2015.

Michael S. Gill, West Chester, for petitioner.

Kathleen M. Kotula, Deputy Chief Counsel, Harrisburg, for respondent.

Adam C. Bonin, Philadelphia, for intervenors Diane Clayton, Richard Hicks, Mary Lynne Massi, Judy Porta, Susan Rzucidlo and David Unger.

Christopher P. Gerber, Chester Springs, and Scot R. Withers, West Chester, for intervenor Republican Committee of Chester County.

OPINION BY Senior Judge COLINS.

This matter is a petition filed by Cuyler Walker (Walker) for leave to withdraw his candidacy for the position of Representative in the Pennsylvania General Assembly, 158th Legislative District, in the November 4, 2014 general election. An evidentiary hearing on the petition for leave to withdraw was held before this Court on September 26, 2014. Following the hearing, on September 26, 2014, the Court issued an order granting Walker's petition for leave to withdraw and removed Walker as the Republican candidate in the general election. This Opinion sets forth the reasons for the Court's order.

Prior to the hearing, the Court entered an order allowing Susan Rzucidlo, Richard Hicks, Diane Clayton, Mary Lynne Massi,

Judy Porta, and David Unger (Intervenors) to intervene, contemporaneously with an order allowing the Republican Committee of Chester County (RCCC) to intervene. The Court also entered an oral order to quash a subpoena served upon Walker by Intervenors. It is the Court's opinion that, in addition to the subpoena being overly vague, the reasons for Walker's decision to remove his name from the ballot were irrelevant under Section 978.4 of the Pennsylvania Election Code (Code), which provides that even after a candidate's deadline to withdraw by right expires 85 days prior to the general election, this Court "shall order the withdrawal of [a] candidate's name for … election, except upon a showing of special circumstances." [1]

 Before we embark upon a discussion of what "special circumstances" means, we must first determine who is the burdened party in such proceedings. Obviously, we cannot require a candidate to prove a negative, i.e., that the special circumstance does not exist. *See Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668, 673 (1968). Therefore, as Intervenors recognized at the hearing, the burden is upon the objector to prove the existence of a special circumstance that should prevent this Court from ordering the withdrawal of a candidate. While there is little authority in matters such as this, the authority that does exist indicates that a determination of whether a special circumstance exists is in the discretion of the trial court. *See In re Petition of Dietterick*, 136 Pa.Cmwlth. 66, 583 A.2d 1258, 1260 (1990) (single judge opinion).

In *Dietterick*, Judge James R. Kelley of this Court addressed the special circumstances that would prevent a candidate

from withdrawing pursuant to Section 978.4 of the Code. Judge Kelley first reviewed the prior caselaw relating to the timing for the substitution of candidates, noting that the time frames in Section 981 of the Code, 25 P.S. § 2941, for the filing of substituted nomination certificates in the event of the death of a candidate or the withdrawal of a candidate nominated at a primary were directory and not mandatory. *See In re Mayor of the City of Altoona, Blair County*, 413 Pa. 305, 196 A.2d 371 (1964); *In re Substitute Nomination for Vacancy in the Democratic Nomination for Office of County Commissioner of Allegheny County*, 383 Pa. 372, 118 A.2d 750 (1955). Judge Kelley next observed that prior to the adoption of Section 978.4 at issue here, our Supreme Court had applied the same leniency to the statutory time frames for withdrawal, concluding that the requirement that a written withdrawal must occur at least 85 days prior to the general election was directory and not mandatory. *See Perles v. Hoffman*, 419 Pa. 400, 213 A.2d 781 (1965). Judge Kelley concluded therefore that the addition to the Code of Section 978.4, directing the court to order withdrawal in the absence of special circumstances without any reference to time, recognized that time limitations do not have the force of law and confers discretion on the court to determine what constitutes "special circumstances." *Dietterick*, 583 A.2d at 1260.

Judge Kelley, turning from a review of the law to the factual dispute before him, noted that the candidate, Dietterick, had filed his petition for leave to withdraw on October 11, 1990, six days after his conviction for forging insurance documents. *Id.* at 1258. The Bureau of Elections appeared in the case and objected to the

---

1. Act of June 3, 1937, P.L. 1333, added by the Act of July 11, 1980, P.L. 591, *as amended*, 25 P.S. § 2938.4.

withdrawal petition. *Id.* Judge Kelley observed that the process of printing the ballots had already begun and, though there was competent testimony that replacement label stickers could be affixed over Dietterick's name on the ballots, he had "serious doubts" about this workaround. *Id.* at 1260. Judge Kelley further noted that 268 absentee ballots had already been sent out with Dietterick as the candidate, including 28 sent to military personnel, and 53 of these ballots had already been returned. *Id.* Testimony at the hearing indicated that it was doubtful that amended military ballots sent out after Dietterick's withdrawal would be able to be returned by the November 2 mandatory deadline to postmark absentee ballots. *Id.* Judge Kelley therefore concluded that the absentee ballot situation along with the replacement labels constituted special circumstances, and denied Dietterick's petition for leave to withdraw. *Id.* at 1260–61.

■ Here, Intervenors' main argument, relying on *Dietterick*, is that absentee ballots have already been mailed to military personnel and other overseas voters and there is no guarantee that these absentee voters will be able to receive supplemental ballots and resubmit their votes by the date of the general election. In an effort to prove this, Intervenors called James Forsythe, who is the Director of Chester County Voter Services (Voter Services) and Jonathan Marks, who is the Commissioner of the Bureau of Commissions, Elections and Legislation (Bureau) of the Department of State to testify, but not as to cross.

Mr. Forsythe testified that his office had already sent out 121 absentee ballots, including 5 military and 5 overseas civilian ballots, and that 45 total absentee ballots had been returned to his office as of the day prior to the hearing; of these 45 returned ballots, 1 was an overseas civilian ballot while the remainder were domestic civilian ballots. Mr. Forsythe testified that if this Court granted Walker's petition for leave to withdraw, Voter Services could begin shipping supplemental absentee ballots within a day and would issue supplemental absentee ballots to only those voters in the 158th Legislative District who had already received a ballot and these ballots would only be for the Representative contest at issue here. Mr. Forsythe testified that he would be able to make all of the necessary changes for the processing, printing and testing of the official ballots so long as he received an order from this Court by October 2, 2014.

Mr. Marks testified that the procedure Mr. Forsythe had outlined in his testimony was consistent with the Code and past practice in similar situations encountered by the Bureau over the years. Mr. Marks testified that the Bureau would provide assistance to Voter Services in drafting language to accompany the supplemental absentee ballots. Mr. Marks testified that if the Court granted the petition for leave to withdraw and the RCCC issued a substitute nomination certificate to replace Walker, and the substitute was then challenged, he would advise Voter Services to delay in sending absentee ballots to any domestic civilian absentee voters until the challenge was resolved or until the October 21, 2014 deadline to send out such ballots. Mr. Marks opined that a disruption would therefore be unlikely. Mr. Marks testified that if this procedure was followed the only risk of multiple supplemental absentee ballots being sent out was confined to the 5 military personnel and 5 overseas absentee voters whose ballots had already been sent out. Mr. Marks further testified that the Bureau would work with Voter Services to account for all possible situations (where both the initial and supplemental absentee ballots are received,

where only the initial ballot is received or where only the supplemental ballot is received) in order to fairly reflect the will of the voters.

The Court finds the testimony of both Mr. Forsythe and Mr. Marks credible and, as such, Intervenors have failed to establish any special circumstance that would warrant the denial of Walker's petition for leave to withdraw. Mr. Forsythe and Mr. Marks outlined a procedure for withdrawal and potential substitution that would respect the integrity of the election for the Representative for the 158th Legislative District and would respect the will of the voters and allow all voters, including all domestic and overseas civilian absentees and military personnel, to express their choice on the slate of the electors. At the same time, by granting the petition for leave to withdraw, this Court respects Walker's wish to no longer place his name on the ballot to serve in the General Assembly.

Moreover, this case is distinguishable from the case of *Dietterick* in several very important respects. First, Walker filed his petition for leave to withdraw on September 22, 2014, approximately three weeks earlier in the election calendar than the petition in *Dietterick*. Second, the printing of the official ballots has not begun here and the timing of the order granting the petition for leave to withdrawal will not affect Voter Service's timeline for the printing of the official ballots, while in *Dietterick* the ballot printing process had begun and stickers would have been required to indicate the name on the printed official ballots. Third, many more absentee ballots had been sent out and received in *Dietterick* than here and the compressed time frame made the mailing and receipt of supplemental absentee ballots that much more unlikely in that case. Finally, neither the Bureau nor the Ches-

ter County Board of Elections opposed Walker's petition for leave to withdraw, while in *Dietterick* the Bureau opposed the petition.

Accordingly, the Court granted Walker's petition for leave to withdraw his candidacy for the position of Representative in the Pennsylvania General Assembly, 158th Legislative District.