# Coolbaugh, Appellant, *v.* Herman.

*Corporations—Election of officers—Objection to voting of stock—Act of May 26, 1893, P. L. 141—Undisclosed trust.*

Under the Act of May 26, 1893, P. L. 141, relating to the election of directors of a corporation, it is not necessary that objection to the voting of stock should be simultaneous with the offer of the ballot. It was not the intention of the legislature that a delay of a few moments on the part of the objector should render the protest void.

When a statute directs certain proceedings to be done in a certain way, or at a certain time, the law will be regarded as directory and the proceedings under it will be held valid, though the command of the statute as to form and time has not been strictly obeyed; the time and manner not being the essence of the thing required to be done.

Under the Act of May 26, 1893, P. L. 141, election judges at a meeting of the shareholders of a corporation are bound to reject votes offered in the name of an undisclosed trust.

The purpose of the act of 1893 was to prevent the voting of stock by one not the owner or who was an undisclosed trustee, and the essence of the requirement as to the objection is that it must be made at a time when it may be considered and passed upon by the election officers, and the disputed ballot rejected if unlawfully offered.

The act of 1893 was passed to further define evidence of stock ownership and the right to vote thereon. Under its provisions if the person in whose name the stock stands and who is offering a vote thereon either in person or by proxy, is not the owner thereof either in his own right or as active trustee, with the character of his trusteeship disclosed on the face of the certificate or transfer books in connection with his name, he is not entitled to vote the stock.

Argued March 10, 1908. Appeal, No. 376, Jan. T., 1905, by plaintiff, from judgment of C. P. Northampton Co., Feb. T., 1907, No. 41, on verdict for defendant in case of Frank W. Coolbaugh v. Asher W. Herman. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Quo warranto to determine right to office of director of a corporation. Before STEWART, J.

The facts are stated in the opinion of the Supreme Court.

The court charged in part as follows :

Now, as I have already said, the certificate of stock and the books of the company and this list which was furnished under the provisions of the act of 1874, that would be prima facie— or, in the first instance, to start off with, the evidence which these election officers had as to who had the right to vote. [" But if objection "—I am reading from the act of assembly —" is taken by an actual stockholder "—it is admitted that Mr. Coolbaugh was an actual stockholder—" at the time the ballot is tendered." It does not say at the time when the ballot was tabulated ; it does not say at the time when the calculation is made, but at the time when Kuebler and Kinsey and the other party, Hilliard, I believe it was, tendered their ballots. Was there, then, an objection made in writing ; was there an objection, accompanied by a written statement in writing, made ?] [2] Now, if there was, then it shall be the duty of the judges of election to inquire and determine summarily. It does not mean that the judges of election should wait until after they had gotten in all the rest of the ballots ; but they should determine summarily whether the facts are as represented in such statement. So it seems to me that it is a preliminary and necessary thing that when these ballots were tendered to these election officers that Coolbaugh ought to put in his protest. [There is no question about the fact

that he did protest, everybody admits that, but did he protest in time ; was his protest put in at the time when these ballots were tendered by Kuebler and by Kinsey and by Hilliard when they voted this trustee stock which went to make up these 1,930 votes which are in dispute ? If you find as a matter of fact from a consideration of all this testimony that he did not make his protest in time, as I have indicated what the time is, then it would be your duty to find a verdict in favor of the defendant.] [3]  But if you find from all the testimony in the case that Mr. Coolbaugh did make his protest when these gentlemen tendered their ballots to the election officers, then it would be your duty to find a verdict in favor of the plaintiff ; remembering that the burden is upon the plaintiff to satisfy you by the weight of the evidence that he did get his protest in at the right time.  Now, by time the law does not mean that he should do it in the next second, or that he should be right there and hand it in just as soon as the other man handed in his ballot, but it must be within a reasonable time.  That is to say, a party who is intending to protest and who is intending to object, ought to be present, and he ought to watch and see when ballots are offered, just as you would challenge a voter at a general election, and when the man walks up with his ballot he ought to walk up with his protest, and the one event ought to follow the other in a natural and orderly sort of way.

Plaintiff presented these points :

3. That it now appearing by said certificates and transfer books, the character of the trusteeship of the several persons claiming the right to vote on said stock, and the evidence in the case that the said stock was not owned by the persons claiming the right to vote thereon in their own right or as trustees, the character of whose trusteeship was disclosed on the face of the certificates and transfer books, the jury must render a verdict in favor of the plaintiff.  *Answer :* That is refused, because it requires that the case should be taken away from you.  I submit the question to you. [5]

4. The provision in the act of 1893 that the objection to the vote of any person claiming a right to vote shall be. offered at the time the ballot is tendered, is not mandatory but directory only.  *Answer :* I refuse that point.  It seems to me that this

direction that objection should be made at the time when a ballot is tendered, is of the very essence of the act of assembly, and when taken in connection with the fact that the judges are to act summarily, it seems to me that it is a mandatory provision, as I have already charged you. [6]

6. Under all the law and the evidence the verdict of the jury should be for plaintiff. *Answer:* That point is refused. [7]

*Errors assigned* were (2, 3, 5, 6, 7) above instructions, quoting them.

*Frank Reeder, Jr.,* of *Reeder & Coffin,* with him *Samuel Scoville, Jr.,* and *Charles H. Edmunds,* for appellant.—The amending act of 1893 is a remedial statute. Prior to its enactment there was no provision of law which would prohibit an inactive trustee from voting stock standing in his name contrary to the wish of the beneficial owners thereof, and against their interest. The act was intended to remedy this defect in the law, and, being a remedial measure, is to be interpreted liberally : Quinn v. Fidelity Beneficial Assn., 100 Pa. 382 ; Schuylkill Navigation Co. v. Loose, 19 Pa. 15 ; Hassenplug's App., 106 Pa. 527 ; Clay v. McCreanor, 9 Pa. Superior Ct. 433 ; Howes Brothers v. Dolan, 9 Pa. Superior Ct. 586.

The provisions of a statute prescribing duties to be performed in respect to any matter are, so far as they relate to the time and manner of performance, directory only, and where the thing to be done may be as well done after as before the time described, and where it is a matter of manner, order or convenience, rather than of substance, the courts will assume the legislative intent not to have been mandatory : Gearhart v. Dixon, 1 Pa. 224 ; Magee v. Com., 46 Pa. 358 ; Cowan's Estate, 184 Pa. 339 ; Com. v. Griest, 196 Pa. 396 ; Walker v. Edmonds, 197 Pa. 645 ; Com. v. Zillafrow, 207 Pa. 274.

Whether a provision in a statute is mandatory or merely directory, depends on whether the thing directed to be done is of the essence of the thing required or is mere matter of form : Norwegian Street, 81 Pa. 349 ; Bladen v. Philadelphia, 60 Pa. 464.

*H. J. Steele*, with him *E. W. Edgar*, for appellee.—When a statute fixes the time within which an act must be done, the courts have no power to enlarge it, although it relates to a mere question of practice : Harris v. Mercur, 202 Pa. 313.

OPINION BY MR. JUSTICE POTTER, May 25, 1908 :

This was a quo warranto to try the right of the defendant, Asher W. Herman, to hold the office of director of the Sterlingworth Railway Supply Company, a corporation of the state of Pennsylvania. At the annual election held January 22, 1907, certain shares of stock standing on the books in the name of " William J. Kuebler, Trustee," and " Howard P. Kinsey, Trustee," and " Zearfoss and Hilliard, Trustees," were voted by the parties named as trustees in favor of the defendant as a director. It was claimed by relator that these votes were illegal, and this was conceded by defendant if objection thereto at the election was made in time. It was admitted on the trial that during the election objection to the contested votes was made and a statement under oath furnished to the election officers as required by the Act of May 26, 1893, P. L. 141, but the testimony was conflicting as to whether this was done at the time the ballots were tendered, or later. It is conceded that if the objection was made and statement filed in time, sufficient contested votes must be rejected to change the result of the election so far as the relator is concerned.

The court submitted to the jury the question of fact whether the objection was made and a statement filed at the time the ballots were tendered to the election officers, saying in his charge, " Now, by time, the law does not mean that he should do it in the next second, or that he should be right there and hand it in just as soon as the other man handed in his ballot ; but it must be within a reasonable time." But the learned judge went on to charge the jury that if there was an interval of perhaps fifteen minutes after the ballots were tendered before the protest came and was filed with the judges of the election, that the verdict then ought to be in favor of the defendant in this case. Under this charge, the jury found for the defendant, and judgment was entered upon the verdict.

While the testimony is conflicting as to whether the protest was made immediately upon the contested ballots being of-

fered, or ten or fifteen minutes later, it clearly appears from the evidence that at the time when the protest was made, the election was still in progress, and there was no question as to the identity of the ballots which had been objected to.

This case seems to have been tried upon the theory that the election board did not act upon the protest which was filed, and that it was not required to do so, if the protest was not filed substantially at or about the time when the ballots were tendered. But it appears from the evidence that the election board did take action upon the protests, and that they determined to accept the votes as offered, in accordance with the list of stockholders furnished to them by the secretary, and that they pursued this policy in the face of and without regard to the protests. The testimony shows that the election board listened to argument as to the legality of the votes, before the voting was concluded or the result announced; and that they deliberated upon, and talked over, the matter before deciding whether or not they would exclude the votes which were objected to. Conrad Miller, one of the tellers, testified: "The vote was tendered and was accepted and passed upon, and shortly after, I am unable to say just when, those papers were presented, those objections; then we stopped awhile and considered whether it was legal, whether we would pick out those ballots out of the hat again."

It is apparently conceded by everyone that if the decision of the election board had been to exclude, instead of accepting them, there could have been no doubt as to the particular ballots objected to, and no difficulty in identifying and removing them from the receptacle in which they had been deposited.

The real question which arises in this case, is not whether the election board should have taken action respecting the protests, for clearly that is what they did. But the point is, whether the effect of their action is to be permitted to stand, under the plea that they should not have considered the protest at all, because it came a few minutes after the ballot was tendered. We do not consider the reference in the statute to the objection being taken at the time the ballot was tendered, as a peremptory requirement that the objection and the offer of the ballot shall be simultaneous. The learned judge of the court

below conceded this, but he instructed the jury that the protest in order to be effective must follow almost immediately after the deposit of the ballot. We are not persuaded that the legislature intended that a delay of a few moments upon the part of the objector should render his protest void. No rights were impaired thereby.

"In general, it may be laid down as a rule, that when a statute directs certain proceedings to be done in a certain way, or at a certain time, the law will be regarded as directory and the proceedings under it will be held valid, though the command of the statute as to form and time has not been strictly obeyed; the time and manner not being the essence of the thing required to be done:" Potter's Dwarris on Statutes, 221, 226 (note 29).

The purpose of the statute under consideration, was to prevent the voting of stock by one not the owner, or who was an undisclosed trustee. And the essence of the requirement as to the objection, is that it must be made at a time when it may be considered and passed upon by the election officers, and the disputed ballot rejected if unlawfully offered.

Under the facts of the case at bar, no difficulty appeared in identifying the ballots to which objection in writing was made, at the time when the election board were considering the protests. The act of 1893 was passed to further define evidence of stock ownership and the right to vote thereon. Under its provisions, if the person in whose name the stock stands, and who is offering to vote thereon either in person or by proxy, is not the owner thereof, either in his own right or as active trustee, with the character of his trusteeship disclosed on the face of the certificate or transfer books in connection with his name, he is not entitled to vote the stock. Clearly, therefore, it was the duty of the election judges to reject the votes offered in the name of an undisclosed trust. Obviously, in so far as the stock to the voting of which objection in this case was made, was concerned, the character of the trusteeship was not disclosed, and the votes so tendered should have been rejected.

The plain intention of the statute is to prevent voting by an inactive trustee, or in behalf of an undisclosed trust. It cannot be said that such a requirement is destroying any prop-

erty right. It is merely regulating the exercise of the right. If the trust be not active, the right to vote the stock is expressly reserved to the real owner by the second section of the act.

The fifth, sixth and seventh assignments of error are sustained.

The judgment is reversed and it is here entered for the plaintiff.