## Altoona Mayor Substitute Nomination Case.

Argued October 7, 1963. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*John R. Strawmire,* for appellant.

*Robert C. Haberstroh,* for Board of Elections of
Blair County, appellee.

*Samuel H. Jubelirer,* with him *Jubelirer & Ca-
rothers,* for appellee.

ORDER PER CURIAM, October 11, 1963:
The order of the court below is affirmed. Opinion
to be filed later.
Mr. Justice COHEN dissents.

———

OPINION BY MR. JUSTICE ROBERTS, January 7, 1964:
At the primary election on May 21, 1963, Roy F.
Thompson was nominated as the Republican candidate
for mayor of the City of Altoona in the election to be
held November 5, 1963. On September 3, 1963, he

formally withdrew as a candidate. By appropriate action (on September 9), the Republican City Committee, in accordance with party rules, selected Robert Smay as the substituted nominee for mayor. On the following day, a substituted nomination certificate, naming Smay to fill the party vacancy, was filed with the County Board of Elections. Thereafter, on September 13, Mr. Smay withdrew as the Republican nominee and filed his written withdrawal with the County Board of Elections.

The Republican Committee, on September 17, 1963, pursuant to its party rules, designated William H. Prosser the substituted nominee for mayor and, the next day, forty-eight days prior to the election, filed with the county board its substituted nomination certificate, which the board accepted.[1] At that time, as well as at the time of oral argument before this Court, printing of the ballots had not yet begun. Thereafter, the Democratic County Committee filed its objection to the certificate on the ground that it was not filed within the time prescribed by the Election Code. To these objections, the county board filed a demurrer. The court below sustained the action of the board of elections, and this appeal followed. We affirmed the order of the court below and noted that an opinion would be filed later.

The single question presented on this appeal is whether the Election Code permits substitution of a nominee for a withdrawn candidate only if that vacancy is filled "at least fifty-five (55) days before" the November election, as appellant contends, or whether the recited period of time is merely directory and the substituted nomination may be made "at any time pri-

---

[1] Prior to its acceptance, the Democratic County Committee filed with the board a letter objecting to the substituted nomination certificate. No objections were interposed to either of the withdrawals.

or to the day on which the printing of the ballots is started," as appellees urge.

The presently material provisions of the Election Code[2] follow: Section 979 (25 P.S. §2939): "Any vacancy happening or existing after the date of the primary in any party nomination, by reason of the death or withdrawal of any candidate after nomination, . . . may be filled by a substituted nomination made by such committee as is authorized by the rules of the party to make nominations in the event of vacancies on the party ticket: . . . ".

Section 981 (25 P.S. §2941): "(a) Substituted nomination certificates to fill vacancies caused by the withdrawal of candidates nominated at primaries . . . shall be filed . . . at least fifty-five (55) days before the day of the general or municipal election: . . . . (b) Substituted nomination certificates to fill vacancies caused by the death of candidates nominated at primaries or by nomination papers shall be filed at the proper office at any time prior to the day on which the printing of ballots is started."

Section 1006 (25 P.S. §2966): "As soon as any substituted candidate shall have been duly nominated, at any time prior to the day on which the printing of ballots is started, his name shall be substituted in place of that of the candidate who has died or *withdrawn*." (Emphasis supplied.)

The controlling inquiry is whether the time reference in Section 981(a) is a mandate or a direction. It is significant that each subsection, (a) and (b), contains a separate time requirement for substitution but that both classes of vacancies are treated together and similarly in Section 1006. That section concludes with the direction that "his name shall be substituted in place of that of the candidate who has died or with-

---

[2] Election Code of 1937, June 3, P. L. 1333, §§979, 981, 1006, as amended, 25 P.S. §§2939, 2941, 2966.

drawn." Meaning cannot be given to Section 1006, as the board, the court below and we are required to do, if we accept appellant's contention that the fifty-five day clause in Section 981(a) is mandatory. In clear language, Section 1006 directs that *any substituted candidate* shall have his name on the ballot so long as the substitution is made before the day on which the printing of the ballots is started. If that be accomplished, "his name shall be substituted in place of that of the candidate who has died or withdrawn." If the Legislature had not intended to include substitution for withdrawn candidates, it simply would have ended the section after the word "died" and not continued with "or withdrawn."

In *County Commissioner Substitute Nomination Case,* 383 Pa. 372, 118 A. 2d 750 (1955), this Court passed on the filing time provision in Section 981(b). There, the vacancy on October 24, 1955, was caused by death, and the Democratic Committee sought to fill the vacancy by a substituted nomination made on October 26. The printing of ballots for the municipal election (November 5) had been started on October 5 and completed on October 25. Military ballots had already been mailed prior to October 24.

In opposing substitution, it was vigorously argued that the time provision of subsection (b) was mandatory and required that substituted nomination certificates could be filed only prior to the day on which the printing of ballots is started. Section 1006 was also quoted. We rejected this view and construed the time language as merely directory. We affirmed the order of the court below which directed, with only eleven days remaining before the election, that stickers be printed to correct the ballots to include the name of the substituted nominee.

Here, too, we are urged to construe a filing time provision as a mandate. It is important to note that

in the *County Commissioner* case, the Court construed, as directory two sections of the Code, 981(b) and 1006. In the present case, we are also faced with an apparent inconsistency between two sections (981(a) and 1006), which did not exist there. Although that case expressly did not construe Section 981(a), its reasoning is compelling. Chief Justice HORACE STERN, for the Court, wrote (at 377, 118 A. 2d at 753) : "The Election Code comprises, exclusive of amendments, over 200 pages, and it is perhaps inevitable that it should contain some ambiguities and inconsistencies; where that occurs, all of the relevant sections of the Act, as well as its purpose, object and intent, must be considered in construing any part which may be obscure. The sections to which we have referred must be given a reasonable and practical rather than an intensely narrow, literal construction. Consequently, they are to be construed as being merely directory, not mandatory, and as meaning that a substituted nomination for a *deceased* candidate may be made so long as time permits for the correction of the ballots accordingly. . . ."

The views expressed by Mr. Justice MUSMANNO in his concurring opinion are likewise valid and persuasive and furnish an effective answer to appellant's contentions. Of the time provision in Section 981(b), he said (at 379-80, 118 A. 2d at 753-54) : "Interpreted literally, this provision would mean that the sticker substitution could not be accomplished because the printing of the ballots was already finished as of October 25, 1955, two days before the petition was filed. Eleven days, however, yet remained before election day, ample time within which to print the stickers and attach them to the ballots.

"If the literal interpretation was to prevail, and the substitution by sticker was to be prohibited, a most anomalous and even grotesque situation would result. It would compel those who believed that the adminis-

tration of the Allegheny County government should be
entrusted to the Democratic Party to vote for one live
man and one dead man—and this, in spite of the fact
that a substitute live man was already standing by,
qualified for the race in which the deceased Mr. Fowler
had fallen. Was the law to be regarded so inadequate
and incapable of reflection as to insist that the lifeless
runner continue on the course?

". . ."

"It is to be noted that the Legislature did *not pro-
hibit* the filing of substituted nomination certificates
after the beginning of the ballot printing. If that had
been its intention, it could quite easily have said so.
In declaring that the substitution was to be made prior
to the printing of the ballots, it was merely announcing
a policy of convenience and prudence. . . ."

Although, as Mr. Justice MUSMANNO stated, "The
whole question in this case is whether the instruction
in Section 981(b) of the Election Code was a mandate
or a direction," we are now confronted with precisely
the same question involving the preceding subsection
(a), and remaining portions of his opinion (at 380-83,
118 A. 2d 754) are equally pertinent here: "In solving
this question we are not left to logic alone, as formidable
as such a pillar would be in upholding the conclusion
which this Court now reaches. There is stare decisis
to lend its powerful strength in sustaining the decision
which logic and common sense dictate. In 1908 this
Court said in the case of Coolbaugh v. Herman, 221
Pa. 496, 502: 'When a statute directs certain proceed-
ings to be done in a certain way, or *at a certain time*
the law will be regarded as directory and the proceed-
ings under it will be held valid, though the command
of the statute as to form and time has not been strictly
obeyed; the time and manner not being the essence of
the thing required to be done.' . . . .

. . .

"In the Kohn Election Case, 351 Pa. 544, we said that statutory limitations 'are not conclusive when good cause is shown.' The very purpose of election laws is to secure 'freedom of choice and to prevent fraud and corruption; to obtain a fair election and an honest election return; to insure fair elections, or an equal chance and opportunity for everyone to express his choice at the polls; and to secure the rights of duly qualified electors and not to defeat them. *The . election laws should not be so interpreted as to defeat the very object of their enactment.* Election laws are sui generis. Laws regulating the rights of an elector are merely directory.'* [*Corpus Juris Secundum, Vol. 29, §7, p. 27.]

. . .

"The Statutory Construction Act of Pennsylvania (46 PS §501 et seq.) declares that one of the rules which must be followed in determining the intent of the Legislature is: 'That the Legislature does not intend a result that is absurd, impossible of execution, or unreasonable': Sec. 52(1), 46 PS §552(1).

"It obviously requires very little reflection to come to the conclusion that to demand that the people vote on a dead candidate when a live person is available and qualified under the law is absurd and unreasonable." (Italics, Mr. Justice MUSMANNO'S.)

Surely, it is no more reasonable or less absurd to offer to the electorate the name of a publicly withdrawn candidate who was already publicly replaced by the party with authority to make substitution. If appellant prevailed here, we would have reached a result which this Court refused to sanction in the *County Commissioner* case.

The decision of the court below—affirmed by us— permitting the name of the substituted nominee to appear on the ballot is in harmony with the objectives of the Election Code and is in accord with sound public

policy. It imposes neither hardship nor disadvantage upon nor gives preference or advantage to either party or candidate and does maintain a fair and equal balance in the election procedures and machinery, thereby affording the electorate the opportunity for choice, an opportunity basic to a democratic and fair election. To have denied the substitution, in reality, would have resolved the election in advance of November 5 and not at the polls. The selection of elected public officials is historically and legally a function exclusively reserved for eligible voters. No tradition of American life is more cherished than the right of the voter, at all levels of government, to express his choice *between candidates* at the polls.

DISSENTING OPINION BY MR. JUSTICE COHEN:

In *County Commissioner Substitute Nomination Case,* 383 Pa. 372, 118 A. 2d 750 (1955), this Court held that substitution could be made eleven days before the 1955 general election of a candidate for county commissioner *when the previously nominated candidate had died.* In so doing the Court construed the time provisions of §§981(b) and 1006 of the Election Code, 25 P.S. §§2941(b) and 2966, directory, not mandatory. Chief Justice HORACE STERN, in his opinion for the Court, however, pointedly stated: "Consequently, they [§§981(b) and 1006] are to be construed as being merely directory, not mandatory, and as meaning that a substituted nomination for a *deceased* candidate may be made so long as time permits for the correction of the ballots accordingly. The question does not arise with respect to a substituted nomination for a vacancy created by the *withdrawal* of a nominee. Sections 978 and 981(a) of the Election Code, as amended [25 P.S. §§2938, 2941(a)], specifically apply to such a contingency." (Court's emphasis). 383 Pa. 372, 377, 118 A. 2d 750, 753.

314

Former Chief Justice STERN was not given to idle chatter in his opinions, and his repeated emphasis on the fact that the decision there dealt with *substitution by reason of death* rather than *withdrawal* can only be taken exactly as he stated it. In short, the Court was explicitly noting that the rule regarding substitution by reason of withdrawal was entirely different and depended on adherence to §§978 and 981(a) of the Election Code. Justice MUSMANNO in his concurring opinion (relied upon and extensively quoted by the majority) said no more or no less; and his concern with the problems created by the death of a nominee make it quite clear that he, too, was discussing only substitution following death.

Despite this clear holding only eight years ago, we are now treated to the inconsistency of our Court blatantly disregarding what it said in 1955 and adding insult to its disregard by relying on 1955 opinions as if they support the present decision. They clearly do not, and I find the decision and opinion totally incomprehensible in this respect.

There exists good reason for the distinction made by Chief Justice STERN between substitution after death of a nominee and substitution after withdrawal and for the different provisions regarding substitutions in the Election Code. Death, unlike withdrawal, is rarely a voluntary act; it comes frequently unexpectedly, almost always unwillingly. To permit substitution for a deceased nominee up to the last possible moment preserves the best traditions of democracy by giving the electorate a full choice of candidates where otherwise it would be unavoidably deprived of such freedom to select. Withdrawal, on the other hand, is a purely voluntary act; it represents the desire of a nominee to remove his name from consideration. It is not too much to ask of a candidate that he not unduly disrupt the election machinery if he wishes to withdraw and that

he act, if at all, before a certain date. The electorate is not confronted with an unavoidable vacancy as in the case of death, and it rightfully demands that no vacancy be permitted by withdrawal less than sixty-five days before an election; otherwise, candidates could play fast and loose with our election processes and make a mockery of them as was done here.

Despite these obvious considerations, our Court now condones just such a mockery. The duly nominated Republican candidate for Mayor of Altoona filed a timely withdrawal on September 3, 1963, sixty-three days prior to the November 5 election.[1] On September 9, 1963, more than fifty-five days prior to the election, the Republican City Committee duly selected a substitute nominee whose certificate was filed the next day.

Three days later, fifty-three days before the election, for reasons not appearing in the record, the substituted nominee withdrew;[2] and on September 18, forty-eight days before the election, a second substituted, nomination certificate was filed and accepted by the County Board of Elections. In this series of events both sections 978 and 981(a) of the Election Code were violated, and now our Court absolves both violations. I suppose it is now possible for nominees and parties to engage in an almost endless parade of voluntary withdrawals and substitutions. The majority attempts to justify this perversion of the electoral process by the County Board of Elections and the lower court on the need to preserve our American tradition to choose be-

---

[1] Since the sixty-fifth day was a Sunday and the sixty-fourth day a holiday (Labor Day), the withdrawal was timely.

[2] I find unacceptable the inference in the Court's opinion that failure to object to the withdrawal may be significant. The County Board of Elections does not sit as a quasi-judicial body adjudicating contending forces as it wishes but rather as an executive agency to carry out the legislative mandates. Its duties are ministerial only. *Shroyer v. Thomas*, 368 Pa. 70, 81 A. 2d 435 (1951).

tween candidates. I find this an amazing feat of irrational logic and illogical reasoning. To me, the disregard of clear legislative pronouncements by the judiciary does far greater violence to our American tradition. In no way do I wish to associate myself with the majority's opinion or its determination sanctioning flagrant violations of the Election Code. As in *Reading Election Recount Case,* 410 Pa. 62, 188 A. 2d 254 (1963), I agree with former Chief Justice CHARLES ALVIN JONES who pointed out in *Weber Appeal,* 399 Pa. 37, 159 A. 2d 901 (1960) that strict adherence to the Election Code serves a vital purpose in our electoral process and, I might add, conforms to our American tradition.

Accordingly, I dissent.

