531 A.2d 836

General Election—1985. Patricia A. Beharry, Controller of Washington County, Candidate for re-election, and The Committee for Court House Reform through Peter M. Suwak and Patricia A. Beharry, guardians ad litem, Appellants.

General Election—1985. Patricia A. Beharry, Controller of Washington County, Candidate for re-election, and The Committee for Court House Reform through Peter M. Suwak and Patricia A. Beharry, guardians ad litem, Appellants.

Argued May 22, 1987, before Judges CRAIG and BARRY, and Senior Judge NARICK, sitting as a panel of three.

*Peter M. Suwak,* for appellants.

*George Retos, Jr., Retos, Held & Mascara,* for appellees.

OPINION BY JUDGE CRAIG, September 30, 1987:

The most significant issue in this case, among the several questions presented, is whether the power of a court of common pleas to supervise the conduct of elections includes authority to suspend conduct of an election in precincts suffering from emergency conditions and to order the resumption and completion of those particular election processes on a date shortly thereafter, when the emergency is over.

Petitioners Patricia Beharry, controller of Washington County, and The Committee for Courthouse Reform appeal from orders of the Court of Common Pleas of Washington County that (1) suspended, in eleven election districts of Washington County, the statewide general election of November 5, 1985, (2) resumed the election process in those districts two weeks later on November 19, 1985, and (3) dismissed petitioners' Election Code appeal on the ground that they lacked standing, along with concluding that the court's election orders were proper.

On November 5, 1985, Pennsylvania conducted its statewide general election. Rainy weather on that date caused flooding along the Monongahela River in Washington County. Although the polls in Washington County were to be open from 7 a.m., to 8 p.m., President Judge GLADDEN, at the request of the county election board but without conducting a hearing, ordered eleven election precincts within the county closed because of a state of "emergency" created by extreme weather conditions that caused extensive flooding, loss of electricity, heat and water.

Because election judges at six of the affected precincts executed affidavits declaring that their polls remained open for the legally required time despite the disruption of the voting process, some doubt exists as to the severity of the conditions that existed. However, the Washington County commissioners declared that a state of emergency existed in the flooded areas, and the Governor, by proclamation dated November 5, 1985, declared Washington County a disaster area.

In addition to the fundamental question of the court's power to act, the petitioners also question the absence of official notice publication with respect to the resumed election, attack the court's action for lack of uniformity in the treatment of voters, and oppose the conclusion that petitioners were not aggrieved and therefore lacked standing as parties.

Before we can resolve the important substantive issues raised in this case, we must determine if either Ms. Beharry or the Committee for Courthouse Reform has standing to entitle them to pursue the request they seek.

A party claiming standing to pursue a cause of action must have an interest that exceeds the general citizenry's interest in obtaining adherence to the law. *Bahian v. Pennsylvania Department of Public Welfare,* 89 Pa. Commonwealth Ct. 644, 493 A.2d 803 (1985). The party must show that he stands to suffer a direct and substantial harm because of the act complained of. *Appeal of Robert C. Barlip,* 59 Pa. Commonwealth Ct. 178, 428 A.2d 1058 (1981). As a candidate for office in the elections here involved, we conclude that Ms. Beharry was subject to a direct and substantial harm sufficient to give her standing in the matter before us. Even if the final vote count showed that the questioned precincts did not in fact affect Ms. Beharry's ultimate victory, the judicial actions deferring and resuming the

election could have placed her in jeopardy of losing. Having concluded that Ms. Beharry has standing, we need not decide the issue as it relates to the Committee for Courthouse Reform.

With respect to the court's power, neither the Pennsylvania Constitution nor the Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§2601, 4051, expressly provides any procedure to follow when a natural disaster creates an emergency situation that interferes with an election. However, section 1206 of the Code, 25 P.S. §3046, states that the court of common pleas of each county or a judge thereof shall on election day be in continuous session from 7 a.m. to 10 p.m. and during such period shall "decide . . . matters pertaining to the election as may be necessary to carry out the intent of this act. . . ."

The purpose of the election laws is to ensure fair elections, including an equal opportunity for all eligible electors to participate in the election process. *In re Mayor, City of Altoona, Blair County,* 413 Pa. 305, 196 A.2d 371 (1964). Thus, we conclude that the language of 25 P.S. §3046 implicitly grants the court authority to suspend voting when there is a natural disaster or emergency such as that which confronted voters in Washington County on the election date here involved. To permit an election to be conducted where members of the electorate could be deprived of their opportunity to participate because of circumstances beyond their control, such as a natural disaster, would be inconsistent with the purpose of the election laws.

The petitioners next contend that the court erred by conducting a special election on November 19, 1985, without complying with the publication requirements for a November election as set forth in section 1201 of the Election Code, 25 P.S. 3041. Specifically, the notice for the resumption of the election failed to list the

names of candidates vying for the various offices and failed to include the office of county controller as an office being contested.

However, the petitioners' characterization of the resumption of the November 5 election on November 19 as a special election is erroneous. Special elections are held to fill vacancies in specific offices. *See* sections 626-637 of the Election Code, 25 P.S. §§2776, 2787. In this case, the resumed election was not held to fill any vacancies. It was merely a continuation of the November 5, 1985 election. Although a preferable method of resuming a suspended election could well include publication following the pattern prescribed by 25 P.S. §3041, the failure to do so is not a fatal deficiency which would void the election where, as here, there was proper publication of the original election, and the election was resumed within a short period after the suspension.

The final substantive contention, that the court's action was contrary to the uniformity principles of art. 7, §6 of the Pennsylvania Constitution and the Fourteenth Amendment of the United States Constitution, is not well-founded. Although some of the voters of the affected eleven precincts unavoidably had to cast their vote on a date different from that which pertained to most of the voters, that variation was necessary to ensure voter equality in the most important respect, that of equal opportunity to exercise the franchise. Without the court's action, some voters, by reason of the elements, would have incurred the discrimination of disenfranchisement.

The petitioners suggest, as one remedy, that the court should have ordered election officials simply to move the voting facilities of the affected precincts to higher ground, away from the floodwaters. That solution would have truly violated the statutory notice require-

ments because it would have involved the conduct of those precincts' elections at places different from those specified in official notices, with a very short time interval insufficient to permit the necessary information to be conveyed to the public.

Alternatively, the petitioners contend that the court should have voided the entire county election and ordered the holding of an entirely new election countywide. Certainly, there may be circumstances which would warrant that action under other conditions, as where a voter-impeding emergency affects a greater number of, or all, voting precincts. This court does not hold that the remedy which the court applied in this case is the proper one for all situations; we hold only that the court's approach was a reasonable one in the circumstances of this case.

Accordingly, we affirm all of President Judge GLADDEN's orders here appealed, except that part dealing with the issue of standing.

### ORDER IN 3117 C.D. 1985

NOW, September 30, 1987, the orders of the Court of Common Pleas of Washington County dated November 5, 1985, November 6, 1985 and November 18, 1985, at No. 1 January Term, 1985 are affirmed in part and reversed in part consistent with the foregoing opinion.

### ORDER IN 3259 C.D. 1985

NOW, September 30, 1987, the order of the Court of Common Pleas of Washington County dated November 18, 1985 at No. 163 November Term, 1985 is affirmed.