[J-96-2020] [MO: Baer, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| PENNSYLVANIA DEMOCRATIC PARTY, NILOFER NINA AHMAD, DANILO BURGOS, AUSTIN DAVIS, DWIGHT EVANS, ISABELLA FITZGERALD, EDWARD GAINEY, MANUEL M. GUZMAN, JR., JORDAN A. HARRIS, ARTHUR HAYWOOD, MALCOLM KENYATTA, PATTY H. KIM, STEPHEN KINSEY, PETER SCHWEYER, SHARIF STREET, AND ANTHONY H. WILLIAMS | : : : : : : : : : : : : : : : : : : | No. 133 MM 2020 <br><br> SUBMITTED: September 8, 2020 |
| v. | : : : : | |
| KATHY BOOCKVAR, IN HER CAPACITY AS SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA; ADAMS COUNTY BOARD OF ELECTIONS; ALLEGHENY COUNTY BOARD OF ELECTIONS; ARMSTRONG COUNTY BOARD OF ELECTIONS; BEAVER COUNTY BOARD OF ELECTIONS; BEDFORD COUNTY BOARD OF ELECTIONS; BERKS COUNTY BOARD OF ELECTIONS; BLAIR COUNTY BOARD OF ELECTIONS; BRADFORD COUNTY BOARD OF ELECTIONS; BUCKS COUNTY BOARD OF ELECTIONS; BUTLER COUNTY BOARD OF ELECTIONS; CAMBRIA COUNTY BOARD OF ELECTIONS; CAMERON COUNTY BOARD OF ELECTIONS; CARBON COUNTY BOARD OF ELECTIONS; CENTRE COUNTY BOARD OF ELECTIONS; CHESTER COUNTY BOARD OF ELECTIONS; CLARION COUNTY BOARD OF ELECTIONS; CLEARFIELD COUNTY BOARD OF ELECTIONS; CLINTON COUNTY BOARD OF ELECTIONS; COLUMBIA COUNTY BOARD OF | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | |

ELECTIONS; CRAWFORD COUNTY : 
BOARD OF ELECTIONS; CUMBERLAND : 
COUNTY BOARD OF ELECTIONS; : 
DAUPHIN COUNTY BOARD OF : 
ELECTIONS; DELAWARE COUNTY : 
BOARD OF ELECTIONS; ELK COUNTY : 
BOARD OF ELECTIONS; ERIE COUNTY : 
BOARD OF ELECTIONS; FAYETTE : 
COUNTY BOARD OF ELECTIONS; : 
FOREST COUNTY BOARD OF : 
ELECTIONS; FRANKLIN COUNTY BOARD : 
OF ELECTIONS; FULTON COUNTY : 
BOARD OF ELECTIONS; GREENE : 
COUNTY BOARD OF ELECTIONS; : 
HUNTINGDON COUNTY BOARD OF : 
ELECTIONS; INDIANA COUNTY BOARD : 
OF ELECTIONS; JEFFERSON COUNTY : 
BOARD OF ELECTIONS; JUNIATA : 
COUNTY BOARD OF ELECTIONS; : 
LACKAWANNA COUNTY BOARD OF : 
ELECTIONS; LANCASTER COUNTY : 
BOARD OF ELECTIONS; LAWRENCE : 
COUNTY BOARD OF ELECTIONS; : 
LEBANON COUNTY BOARD OF : 
ELECTIONS; LEHIGH COUNTY BOARD : 
OF ELECTIONS; LUZERNE COUNTY : 
BOARD OF ELECTIONS; LYCOMING : 
COUNTY BOARD OF ELECTIONS; : 
MCKEAN COUNTY BOARD OF : 
ELECTIONS; MERCER COUNTY BOARD : 
OF ELECTIONS; MIFFLIN COUNTY : 
BOARD OF ELECTIONS; MONROE : 
COUNTY BOARD OF ELECTIONS; : 
MONTGOMERY COUNTY BOARD OF : 
ELECTIONS; MONTOUR COUNTY BOARD : 
OF ELECTIONS; NORTHAMPTON : 
COUNTY BOARD OF ELECTIONS; : 
NORTHUMBERLAND COUNTY BOARD : 
OF ELECTIONS; PERRY COUNTY BOARD : 
OF ELECTIONS; PHILADELPHIA COUNTY : 
BOARD OF ELECTIONS; PIKE COUNTY : 
BOARD OF ELECTIONS; POTTER : 
COUNTY BOARD OF ELECTIONS; : 
SCHUYLKILL COUNTY BOARD OF : 
ELECTIONS; SNYDER COUNTY BOARD : 
OF ELECTIONS; SOMERSET COUNTY :

BOARD OF ELECTIONS; SULLIVAN : 
COUNTY BOARD OF ELECTIONS; : 
SUSQUEHANNA COUNTY BOARD OF : 
ELECTIONS; TIOGA COUNTY BOARD OF : 
ELECTIONS; UNION COUNTY BOARD OF : 
ELECTIONS; VENANGO COUNTY BOARD : 
OF ELECTIONS; WARREN COUNTY : 
BOARD OF ELECTIONS; WASHINGTON : 
COUNTY BOARD OF ELECTIONS; : 
WAYNE COUNTY BOARD OF : 
ELECTIONS; WESTMORELAND COUNTY : 
BOARD OF ELECTIONS; WYOMING : 
COUNTY BOARD OF ELECTIONS; AND : 
YORK COUNTY BOARD OF ELECTIONS : 
  : 
  : 
PETITION OF: KATHY BOOCKVAR, IN : 
HER CAPACITY AS SECRETARY OF THE : 
COMMONWEALTH OF PENNSYLVANIA : 

## CONCURRING AND DISSENTING OPINION

**JUSTICE DONOHUE**          **DECIDED: September 17, 2020**

I.

I join the Majority's opinion as to Parts I, II, and III(A), III(C), III(D) and III(E).

II.

With respect to Part III(B), I agree that Petitioners are entitled to relief, but I distance myself from the Majority's analysis to reach this conclusion as well as the specific relief granted. Petitioners base their request for relief on the infringement of the rights afforded by Article 1, Section 5 of the Pennsylvania Constitution, our Free and Equal Elections Clause.[1] In my mind, the issue must be framed as an as-applied challenge,

_____

[1] Article I, Section 5 of the Pennsylvania Constitution provides as follows:

during the duration of the COVID-19 public health crisis and current USPS service standards, to the constitutionality of Sections 3150.12a(a) and 3150.16(c) of Act 77, which respectively set the last date on which voters may request mail-in ballots and the deadline for when ballots must be received by county boards of elections. With deference to my learned colleagues, I believe that this issue should have been decided in a case in this Court's original jurisdiction under Act 77, *Michael Crossey et al, v. Kathy Bookckvar, et al.*, No. 108 MM 2020, where the claims likewise were based on the Free and Equal Elections clause and in which this Court ordered the creation of a complete evidentiary record to determine whether the petitioners there had met their high burden to prove the existence of a constitutional injury entitling them to relief.

Despite invoking an as-applied constitutional challenge in the present case, Petitioners and the Secretary (as in *Crossey*) seek equitable relief in the form of an order permitting non-compliance with the received-by provision in Act 77 (Section 3150.16(c)) during the COVID-19 pandemic. I am not as comfortable as the Majority with the ability of this Court to exercise equitable powers in election matters.[2] Because they are

> Elections shall be free and equal; and no power, civil or
> military, shall at any time interfere to prevent the free exercise
> of the right of suffrage.

Pa. Const., art. 1, § 5.

[2] Section 3046 of the Election Code provides courts of common pleas with authority, with some latitude, to make rulings on Election Day to secure compliance with the election laws. 25 P.S. § 6046. Specifically, a judge or judges from each county will remain in session on Election Day to "act as a committing magistrate for any violation of the election laws; shall settle summarily controversies that may arise with respect to the conduct of the election; shall issue process, if necessary, to enforce and secure compliance with the election laws; and shall decide such other matters pertaining to the election as may be necessary to carry out the intent of this act." *Id.* The Commonwealth Court relied on Section 3046 in deciding *In re General Election-1985*, 531 A.2d 836 (Pa. Commw. 1987)

inherently political, elections are appropriately regulated by the political branch. *In re Guzzardi*, 99 A.3d 381, 385 (Pa. 2014). As such, out of respect for legislatures and for the sake of regularity and orderliness in the election process, the supreme courts of our sister states have routinely held that courts cannot exercise equitable powers to mitigate harsh results in derogation of legislative requirements for strict compliance with election-related deadlines. *Butts v. Bysiewicz*, 5 A.3d 932, 947 (Conn. 2010) ("Equity only applies in the absence of a specific statutory mandate."); *see also Martin v. Secretary of State*, 755 N.W.2d 153, 154 (Mich. 2008); *Smith v. Kiffmeyer*, 721 N.W.2d 912, 914–15 (Minn. 2006); *Andrews v. Secretary of State*, 200 A.2d 650, 651 (Md. 1964). Following the leads of these courts, in 2014, this Court denied equitable relief to a litigant in an election case, holding as follows:

> [T]he judiciary should act with restraint, in the election arena, subordinate to express statutory directives. Subject to constitutional limitations, the Pennsylvania General Assembly may require such practices and procedures as it may deem necessary to the orderly, fair, and efficient administration of public elections in Pennsylvania. At least where the Legislature has attached specific consequences to particular actions or omissions, Pennsylvania courts may not mitigate the legislatively prescribed outcome through recourse to equity.

*Guzzardi*, 99 A.3d at 385. The Court recently reaffirmed our decision in *Guzzardi*. *Reuther v. Delaware Cty. Bureau of Elections*, 205 A.3d 302, 308-09 (Pa. 2019).

---

(in light of a flood occurring on election day, the court of common pleas had the authority to suspend voting in certain districts until the emergency was over), *appeal denied*, 544 A.2d 963 (Pa. 1988).

The Majority relies on *In re General Election-1985* to support our broad equitable powers to act in this case despite the limitations in Section 3046.

Without the availability of equitable relief, it is my view that Petitioners are entitled to relief only in the context of an as-applied constitutional challenge. Specifically, Petitioners must prove that in light of the existing circumstances, the short seven-day timeframe established by Sections 3150.12a(a) and 3150.16(c) of Act 77 provides insufficient time for a voter to request a mail-in ballot (by October 27, 2020) and return it to a county board of elections by the statutorily set received-by date (8:00 p.m. on Election Day, November 3, 2020), so that the vote is counted. Such a constitutional challenge requires a plain showing of injury. "There is a presumption that lawfully enacted legislation is constitutional. Should the constitutionality of legislation be challenged, the challenger must meet the burden of rebutting the presumption of constitutionality by a clear, palpable and plain demonstration that the statute violates a constitutional provision." *Yocum v. Commw. of Pennsylvania Gaming Control Bd.*, 161 A.3d 228, 238 (Pa. 2017).

In *Crossey*, the petitioners produced sufficient evidence to meet this high "clear, palpable and plain" burden of proof. Given the deadlines set for the request of and subsequent return of ballots, considered in light of the pandemic and current lagging USPS service standards (which are highly unlikely to improve significantly before Election Day), the evidence in *Crossey* established that there is a strong likelihood that voters who wait until the last day to apply for a mail-in or absentee ballot will be disenfranchised, as their mail-in ballots will not be delivered by Election Day and thus will not be counted. Thus, the short seven-day window set forth in Sections 3150.12a(a) and 3150.16(c) of Act 77 constitutes an interference with the free exercise of the right to vote as guaranteed by our Free and Equal Elections Clause. The evidentiary linchpin for establishing the

unconstitutionality of the seven-day time frame was correspondence from Thomas J. Marshall, General Counsel and Executive Vice President for the USPS, to Secretary Boockvar dated July 29, 2020 advising that the current service standards for delivery of First Class Mail is two to five days, and cautioning that Pennsylvania's application and return deadlines for mail-in ballots are such that despite prompt actions by voters, the ballots may "not be returned in time to be counted." The letter was accepted into evidence in *Crossey* and was further supported by the testimony of the Deputy Postmaster at the time the correspondence was crafted.

The existence of the constitutional injury suffered by virtue of adherence to the statutory deadlines for request and return of ballots is illustrated in the following chart, which incorporates the fact of receipt by the board of elections of an application on the statutory deadline of October 27, 2020. It also assumes that the application is immediately processed and a ballot mailed to the voter within forty-eight hours of receipt of the application.[3] I further take into account that mail is processed by USPS but not delivered on Sundays. All computations are based on the use of First-Class Mail:

| DATE BALLOT MAILED BY BOARD | DELIVERY TIME (in days) | DATE BALLOT IS RECEIVED BY VOTER | DATE BALLOT IS MAILED BACK BY VOTER | DELIVERY TIME (in days) | DATE BALLOT IS RECEIVED BY BOARD | BALLOT RECEIVED IN TIME TO BE COUNTED? |
|---|---|---|---|---|---|---|
| Thursday, 10/29/2020 | 2 | | Saturday, 10/31/2020 | 2 | Monday, 11/2/2020 | YES |
| | | | | 3 | Tuesday, 11/3/2020 | YES |

---

[3] In this regard, we note that 25 P.S. § 3150.15 provides that county boards of elections must deliver the ballots to the voters within forty-eight hours **after** approval of the application. *See* 25 P.S. § 3150.15 ("As additional applications are received and approved, the board shall deliver or mail official mail-in ballots to the additional electors within 48 hours.").

| | | | | | |
|---|---|---|---|---|---|
| | Saturday, 10/31/2020 | | 4 | Wednesday, 11/4/2020 | NO |
| | | | 5 | Thursday, 11/5/2020 | NO |
| | Saturday, 10/31/2020 | Monday, 11/2/2020 | 2 | Wednesday, 11/4/2020 | NO |
| | | | 3 | Thursday, 11/5/2020 | NO |
| | | | 4 | Friday, 11/6/2020 | NO |
| | | | 5 | Saturday, 11/7/2020 | NO |
| 3-4 | Monday, 11/2/2020 | Monday, 11/2/2020 | 2 | Wednesday, 11/4/2020 | NO |
| | Monday, 11/2/2020 | | 3 | Thursday, 11/5/2020 | NO |
| | | | 4 | Friday, 11/6/2020 | NO |
| | | | 5 | Saturday 11/7/2020 | NO |
| | Monday, 11/2/2020 | Tuesday, 11/3/2020 | 2-5 | (After Election Day) | NO |
| 5 | Tuesday, 11/3/2020 | | 2-5 | (After Election Day) | NO |
| | | Wednesday, 11/4/2020 | 2-5 | (After Election Day) | NO |

The only way the current statutory framework works is if the ballot is delivered by USPS in two days, the voter immediately returns the ballot, and it is received by the board of elections within three days. All other voters who comply with the statutory framework are disenfranchised, even though they complied with the statute.

The role of the judiciary when a meritorious constitutional challenge is brought "includes the obligation to vindicate" the constitutional rights at issue, and in doing so courts have wide latitude to craft an appropriate remedy." *Robinson Twp. v. Commonwealth*, 83 A.3d 901, 953 (Pa. 2013); *see also League of Women Voters of Pa. v. Commonwealth*, 178 A.3d 737, 793 (Pa. 2018) ("The Court possesses broad authority to craft meaningful remedies [for constitutional violations] when required."). Where, as

here, "a legislatively unforeseen constitutional problem requires modification of a statutory provision as applied," the United States Supreme Court has admonished courts to look to legislative intent when devising a remedy. *See United States v. Booker*, 543 U.S. 220, 246-47 (2005) (after ruling that federal sentencing statute that made guidelines mandatory was unconstitutional, the Court made an effort to determine what "'Congress would have intended' in light of the Court's constitutional holding." *Id.* at 246-47.

In *Crossey* (and in the present case), Petitioners recommend that the "received by" date be moved from Election Day to seven days after Election Day, so long as the mailing is postmarked by Election Day. In *Crossey* (and here), Secretary Boockvar believes that moving the received-by day forward by three days is sufficient, and that Petitioners' longer time period would in fact interfere with other important functions that must take place after Election Day. In crafting a remedy for an as-applied constitutional violation, a court's duty is to effectuate the intent of the General Assembly to the extent possible and to otherwise not disrupt the statutory scheme. In light of these principles, I do not believe that either of the parties' recommended remedies provide the appropriate solution.

There is no reasonable reading of the statute that would lead to the conclusion that the Tuesday before Election Day was of any institutional importance. Instead, the clear legislative intent was that all ballots were to be cast by 8:00 p.m. on Election Day, the termination of the balloting process. It cannot be viewed as a coincidence that the closing of the polls terminating in-person voting and the receipt of mail-in ballots were designated by the statute to be the same. The last date on which applications for ballots would be accepted was tied to an assumption that a timely vote could be cast before the only

meaningful milestone, Election Day.  As a result, the remedy to best effectuate the legislative intent before the intervening circumstances is to move back, i.e., make earlier, the final date on which applications for mail-in ballots may be submitted to the county boards of elections.  I would accept Secretary Boockvar's opinion that three additional days will substantially correct the problem.  However, moving back by three days the deadline for the receipt of applications by the boards of elections would result in that deadline falling on Saturday.  Instead, to reflect normal business days, the deadline for receipt of the application by the boards of election should be moved to Friday, October 23, 2020.  The received-by date for the ballot by the boards of elections, Election Day by 8:00 p.m., should remain unchanged.

For comparison, the following chart illustrates the new deadlines interfaced with current USPS delivery standards:

| DATE BALLOT MAILED BY BOARD | DELIVERY TIME (in days) | DATE BALLOT RECEIVED BY VOTER | DATE BALLOT MAILED BY VOTER | DELIVERY TIME (in days) | DATE BALLOT RECEIVED BY BOARD | BALLOT RECEIVED IN TIME TO BE COUNTED? |
|---|---|---|---|---|---|---|
| Monday, 10/26/2020 | 2 | Wednesday, 10/28/2020 | Wednesday, 10/28/2020 | 2 | Friday, 10/30/2020 | YES |
| | | | | 3 | Saturday, 10/31/2020 | YES |
| | | | | 4 | Monday 11/2/2020 | YES |
| | | | | 5 | Monday 11/2/2020 | YES |
| | | Wednesday, 10/28/2020 | Thursday, 10/29/2020 | 2 | Saturday, 10/31/2020 | YES |
| | | | | 3 | Monday, 11/2/2020 | YES |
| | 3 | Thursday, 10/29/2020 | | 4 | Monday, 11/2/2020 | YES |
| | | | | 5 | Tuesday, 11/3/2020 | YES |
| | | Thursday, 10/29/2020 | Friday, 10/30/2020 | 2 | Monday, 11/2/2020 | YES |

[J-96-2020] [MO: Baer, J.] - 10

| | | | | | |
|---|---|---|---|---|---|
| | | | 3 | Monday, 11/2/2020 | YES |
| | Friday, 10/30/2020 | | 4 | Tuesday, 11/3/2020 | YES |
| 4 | | | 5 | Wednesday, 11/4/2020 | NO |
| | Friday, 10/30/2020 | Saturday, 10/31/2020 | 2 | Monday, 11/2/2020 | YES |
| | | | 3 | Tuesday, 11/3/2020 | YES |
| | Saturday, 10/31/2020 | | 4 | Wednesday, 11/4/2020 | NO |
| 5 | | | 5 | Thursday, 11/5/2020 | NO |
| | Saturday, 10/31/2020 | Monday, 11/2/2020 | 2-5 | (After Election Day) | NO |

As with the previous illustration, I assume that county boards of elections will process **and** send out the ballots within forty-eight hours of receipt. Whether this is possible, likely or impossible is apparently immaterial, since Secretary Boockvar, with knowledge of the capacities of the county boards of elections, recommended a three-day extension, so I assume that it accounted for this factor.

As required when remedying an as-applied constitutional defect, this remedy is the least disruptive to the enacted statutory scheme. The problem to be remedied here is that the seven-day period to complete the mail-in vote process has been rendered unworkable by the current extraordinary circumstances. I have no doubt that the statute was intended to accommodate the realities as they existed when Act 77 was enacted. It is unconstitutional as applied to the November 2020 general election because of current realities.

For these reasons, in connection with the November 2020 general election only, the deadline for requesting a ballot should be moved to Friday, October 23, 2020.[4] The legislative choice of Election Day at 8:00 p.m. should remain intact.

In summary, I agree with the Majority that the received-by date for ballot applications in light of the deadline for submission of ballots to the county boards of election is unworkable under current circumstances. I dissent from the invocation of equitable powers to craft a remedy. In my view, this issue should have been decided on the evidentiary record developed in *Crossey* based on the analytical framework for an as-applied challenge to the constitutionality of the statutory provisions as violative of Article 1, Section 5 of our Constitution, with the remedy crafted based upon the legislative intent in enacting the circumstantially defective statutes.

Chief Justice Saylor and Justice Mundy join Part II of this concurring and dissenting opinion.

---

[4] To the extent that the non-severability clause in Section 11 of Act 77, 1 Pa.C.S. § 1925 is enforceable, I do not view the election specific remedies at issue here as-applied constitutional violation as triggering the draconian consequence. In the context of the COVID-19 pandemic, applying the non-severability provision to void Act 77 in its entirety would itself be unconstitutional, as it would disenfranchise a massive number of Pennsylvanians from the right to vote in the upcoming election.

More broadly, in *Stilp v. Commonwealth*, 905 A.2d 918, 978 (Pa. 2006), this Court declined to apply an identically worded non-severability provision, *id.* at 973, refusing to allow the General Assembly to "dictate the effect of a judicial finding that a provision in an act is 'invalid.'" *Id.* at 976. Here, as in *Stilp*, Act 77's boilerplate non-severability provision "sets forth no standard for measuring non-severability, but instead simply purports to dictate to the courts how they must decide severability." *Id.* at 973.